Michael BURDA, Plaintiff,

v.

The NATIONAL ASSOCIATION OF POSTAL SUPERVISORS, et al., Defendants.

Civ. A. No. 83–1400.

United States District Court, District of Columbia.

June 21, 1984.

Motion for Reconsideration July 27, 1984.

Robert J. Flynn, Jr., Washington, D.C., for plaintiff.

Rebecca L. Ross, Asst. U.S. Atty., Washington, D.C., for Thomas Tinsley, George MacWhorter, and George Bower.

Joseph Scott, David Shapiro, Kator, Scott & Heller, Washington, D.C., for Thomas Tinsley.

Timothy J. May, David C. Todd, Duane A. Siler, Russel V. Randle, Patton, Boggs & Blow, Washington, D.C., for Nat. Ass'n of Postal Sup'rs.

David F. Grimaldi, Washington, D.C., for Mutual of Omaha.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

On May 16, 1983, plaintiff, Michael Burda, brought suit against the National Association of Postal Supervisors (NAPS), Mutual of Omaha, two current employees of the Office of Personnel Management (OPM) and one former employee of OPM, alleging common-law and constitutional torts. All the defendants, with the exception of Mutual of Omaha,[1] have filed dispositive motions seeking dismissal of the complaint. NAPS also filed a motion for partial summary judgment on its counterclaims.[2]

For the reasons stated below, the Court finds that all of plaintiff's claims arising before May 16, 1980 are time barred; that the federal defendants are absolutely immune from suit for common-law torts; and that all the constitutional claims are meritless. Because this Memorandum Opinion dismisses all federal claims, plaintiff's remaining claims—those arising after May 16, 1980, which allege common-law torts against *non*-federal defendants—and NAPS' counterclaims are dismissed without prejudice to refiling in an appropriate forum.

## BACKGROUND

The Federal Employees Health Benefits Act of 1959 (FEHBA), 5 U.S.C. §§ 8901–13, created the Federal Employees Health Benefits Program, through which federal employees may purchase health insurance as a fringe benefit of government employment. To implement the program, FEHBA authorizes OPM to enter into contracts with nongovernmental entities called "carriers", which, under a variety of health benefits plans, provide or reimburse the cost of health services in exchange for premiums paid for in part by the employee and in part by the government. § 8902(a). See §§ 8901(7); 8906. Section 8902(i) requires that rates charged by a carrier for a health benefits plan "necessarily and equitably reflect the cost of the benefits provided." To enable OPM to insure the reasonableness of the rates charged, carriers must permit OPM to examine their records. § 8910.

NAPS, a labor organization, is a carrier under contract with OPM, offering a health benefits plan to its members. According to the averments of the complaint (fiercely

---

1. Because the portion of the complaint against Omaha parallels the allegations against the other defendants, the Court will treat those allegations in the same manner that it treats the portions of the complaint against the moving defendants. The Court notes that Mutual of Omaha is treated relatively cursorily in the complaint. For example, the complaint does not mention who, at Mutual of Omaha, committed the torts alleged.

2. NAPS' counterclaims are dealt with *infra* at 276, 279 & n. 7.

controverted by the defendants), defendant Thomas Tinsley, then Assistant Director (Benefits Policy) of OPM,[3] suggested in 1978 to plaintiff that plaintiff become administrator for NAPS' health benefits plan. Tinsley, intending to "feather his own nest" upon his imminent departure from OPM, indicated to plaintiff that the program would be "a piece of cake," and one of "instant profitability." Burda subsequently, on April 24, 1979, entered into a three-year contract with NAPS. That contract provided that NAPS would pay plaintiff the "actual and common and reasonable charges incurred ... with appropriate justification and accounting support, and subject to audit by [OPM]." It further provided that NAPS would not be liable to Burda for any expenses "disallowed by OPM." Plaintiff alleges that in reality NAPS and Tinsley were conspiring to have Burda expend funds and effort to implement the plan, and were then planning to jettison him and "blow Burda out" of his contractual rights.

In June 1979, Tinsley retired from federal service, and in the fall of 1979 began part-time consulting work for plaintiff. At that point, the complaint alleges that Tinsley, NAPS, defendant Mutual of Omaha, and defendant George MacWhorter (at that time Chief, Employee Organization Plans Division, Office of Insurance Programs, OPM; currently Deputy Assistant Director, Office of Insurance Programs),[4] conspired to wrongfully disallow plaintiff reimbursement for funds he had expended to implement the plan both before and after the execution of his contract with NAPS.

In April 1980, an audit of plaintiff's pre-contract expenditure of funds was conducted by an allegedly incompetent auditor who, according to plaintiff, was intentionally hired by Tinsley in an effort to subvert plaintiff's position. As a result of the au-dit, OPM disallowed a portion of the money claimed by plaintiff. Plaintiff, "exhausted from the emotional, mental and financial pressures applied" by the defendants, resigned in 1981 from his position as plan administrator. However, plaintiff still had some outstanding claims for reimbursement so a second audit was conducted in 1982, and again as a result OPM disallowed a portion of plaintiff's claim for reimbursement. Plaintiff alleges that as a result of OPM's wrongful disallowances, $62,229.58 of his expenditures went unreimbursed. Plaintiff also alleges that MacWhorter and another defendant, George Bower (MacWhorter's replacement as Chief, Employee Organization Plans Division, Office of Insurance Programs, OPM), engaged in *ex parte* meetings with NAPS for the purpose of denying plaintiff an opportunity to present his position regarding the second audit's results. Burda now seeks $62,229.58 and punitive damages for fraud, conspiracy, tortious interference with a contractual relationship, violation of the Fourth, Fifth and Sixth Amendments, and intentional infliction of emotional distress.

NAPS, in its counterclaims, alleges breach of contract, conversion, failure to repay money owed, fraud, and breach of fiduciary duty. NAPS seeks $48,352 for funds that it advanced to plaintiff but which were later disallowed by OPM, $2,317.54 for a debt of plaintiff's which NAPS discharged, and punitive damages.

## ANALYSIS

### A. Statute of Limitations

All of plaintiff's causes of action are subject to the three-year statute of limitations set forth in D.C.Code § 12–301(8). *See Lawrence v. Acree,* 665 F.2d 1319, 1323 n. 5 (D.C.Cir.1981). Plaintiff filed the complaint on May 16, 1983; consequently all causes of action arising prior to May 16, 1980, are time-barred, absent

---

**3.** According to Tinsley's affidavit at ¶ 3, his responsibilities included "supervising those who judge the [health benefits] plans' compliance with law and regulation, and negotiating on issues of cost and coverage."

**4.** According to MacWhorter's affidavit at ¶ 2, his responsibilities included overseeing "the administration of employee organization plans participating in the [FEHBA]."

fraudulent concealment by defendants. *See Smith v. Nixon*, 606 F.2d 1183, 1190 (D.C.Cir.1979); *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C.Cir.1977). In a case of fraudulent concealment, the statute of limitations does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of his lawsuit. *Smith v. Nixon*, 606 F.2d at 1190, *quoting Fitzgerald v. Seamans*, 553 F.2d at 228.

Plaintiff, while acknowledging the three year period, filed his own affidavit on October 25, 1983, in support of his contention that defendants fraudulently concealed from plaintiff the basis of the lawsuit. But in that affidavit plaintiff presents little more than the bare allegation that he first discovered the existence of his causes of action in 1981 as a result of unspecified litigation filed against him in the Superior Court of the District of Columbia. Burda's conclusory affidavit is insufficient to establish any fraudulent concealment by defendants. He fails to set forth any of the facts that he supposedly learned in 1981, and why he could not have discovered them any earlier through due diligence.

Furthermore, plaintiff's own complaint alleges facts which show that had he exercised due diligence he should have discovered the alleged conspiracy before May 16, 1980. For example, in late 1978 Tinsley allegedly assured plaintiff that the health plan would be a "piece of cake" and one of "instant profitability." But certainly by April 1980, when major portions of plaintiff's claims for reimbursement were disallowed as a result of the first audit, he should have realized that Tinsley's assurance was false. Indeed, Burda's own complaint stresses the importance of the first audit as a key component of defendant's conspiracy: "This sham audit and MacWhorter's role in delivering it were all part of the *a priori* conspiracy between NAPS, Tinsley, OPM through MacWhorter, and Mutual of Omaha to sever Burda from his contractual rights." Complaint ¶ 36. Thus, assuming without deciding that Tinsley's assurances could serve as the basis for plaintiff's claims, he should have been aware of the patent falsity of those assurances at least by April 1980.

A second example, again culled from plaintiff's complaint, illustrates that he should have suspected wrongdoing even earlier. In paragraph 33, the complaint states:

> In early 1980, NAPS, Tinsley (who in conjunction with the aforementioned conspiracy had become employed by the NAPS plan through Burda in August 1979), OPM through MacWhorter, and Mutual of Omaha then dealt Burda the blow they had been planning since April, 1979. By letter of January 23, 1980, MacWhorter suggested NAPS enter [sic] a contract with Mutual of Omaha, and the issue of allowable pre-contract expenses (for Burda) should be solved by these two parties. This is a concrete manifestation of the *sub rosa* plan these parties had for quite some time regarding Burda.

A copy of this letter of January 23, 1980, was sent to plaintiff. *See* Exhibit D to the Complaint. Since this letter, in the complaint's own words, was a "discrete manifestation" of the conspiracy, plaintiff should have been alerted in January 1980 to defendants' alleged wrongdoing.

In sum, Burda's affidavit filed in support of his opposition to defendants' motions, provides nothing other than unsupported conclusory assertions to establish the existence of fraudulent concealment. For that reason, and because the complaint belies the affidavit's unsubstantiated assertions, the Court will dismiss all claims arising prior to May 16, 1980.

**B. Common-Law Claims Against the Federal Defendants**

The complaint alleges a number of common-law torts committed by the federal defendants, Tinsley, Bower and MacWhorter. Tinsley, before leaving his employ with OPM, fraudulently induced plaintiff to enter into the contract with NAPS. All three defendants then tortiously interfered with plaintiff's contract with NAPS and intentionally inflicted emotional distress on

plaintiff.[5] These claims must be dismissed because of these defendants' absolute immunity from plaintiff's claims of common-law tort.

■ A federal official acting within his jurisdiction, is absolutely immune from all common-law tort actions. *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). *See Butz v. Economou*, 438 U.S. 478, 494–95, 98 S.Ct. 2894, 2904–05, 57 L.Ed.2d 895 (1978). A federal official's jurisdiction is to be construed broadly so as to effectuate the purposes of this absolute immunity. *Simons v. Bellinger*, 643 F.2d 774, 786 (D.C.Cir.1980). This is a functional approach, extending absolute immunity when needed to further the effective functioning of the official. *McKinney v. Whitfield*, 736 F.2d 766 at 770 (D.C.Cir.1984). Once within the federal official's jurisdiction, then the immunity bars even those suits alleging intentional torts. *Wallen v. Domm*, 700 F.2d 124, 126 (4th Cir.1983). *See McKinney*, at 770 n. 17.

■ The federal defendants were all acting within their jurisdiction in their dealings with plaintiff. Their contacts with him stemmed from their responsibilities as OPM officials under FEHBA to oversee federal employees' health benefit plans. Consequently, the common-law claims against them, because they arise from those matters within their jurisdiction, are barred by the absolute immunity of these defendants.

### C. The Constitutional Claims

■ Burda claims violation of his Sixth Amendment right to counsel as a result of alleged *ex parte* contacts that defendants MacWhorter and Bower engaged in with NAPS during the second audit. That claim is meritless, since the Sixth Amendment, by its very language, applies only to "criminal prosecutions." And, though there might be some sort of right to counsel implicit in the *Fifth* Amendment's guarantee of due process, *see Goldberg v. Kelly*, 397 U.S.

254, 270–71, 90 S.Ct. 1011, 1021–22, 25 L.Ed.2d 287 (1970); *Mosley v. St. Louis Southwestern Railway*, 634 F.2d 942, 945 (5th Cir.1981), these *ex parte* contacts did not violate that right where the regulations clearly encourage such contacts as a form of informal dispute resolution. *See* 41 C.F.R. § 1–1.318–1.

■ Similarly meritless is plaintiff's Fourth Amendment claim, where he alleges that the pre-contract audit violated his right to be free of unreasonable searches and seizures. Plaintiff consented to the audit, as he was required to under the contract with NAPS and under FEHBA. To prove his claim for reimbursement, plaintiff had to make available the necessary documents, thereby waiving his Fourth Amendment rights.

■ Lastly, plaintiff argues that in conspiring to disallow plaintiff's requests for reimbursement, defendants violated the Fifth Amendment by depriving him of property without due process of law. The Court dismisses this claim as well. Even assuming that plaintiff's reimbursement claim amounts to "property," and even assuming that any process that is due from OPM runs to the plaintiff (who entered into a contract with NAPS, not OPM), the Court dismisses the claim because plaintiff received all the process that was his due.

In the complaint itself Burda describes two meetings, January 17, 1983 and March 1, 1983, when he met with OPM officials regarding his disallowed claims. NAPS forwarded to plaintiff's counsel a copy of OPM's preliminary audit of August 6, 1982 (which was subject to a 45-day comment period), and invited plaintiff's counsel to contact OPM directly. Plaintiff's counsel thereupon responded directly to OPM. NAPS also offered to sponsor any appeal of OPM's final decision before the Armed Services Board of Contract Appeals under the Contract Disputes Act. Though plaintiff would have been entitled to a trial-type

---

5. Though Bower and MacWhorter were employees of OPM throughout, Tinsley left OPM in June 1979. This portion of the Memorandum Opinion, dealing with official immunity, applies to Tinsley only for the period during which he was still with OPM.

hearing before the Board, 41 U.S.C. §§ 601 *et seq.*, plaintiff did not take advantage of that offer.

Thus, plaintiff had every opportunity to present and document his claims. In light of OPM's oversight role under FEHBA and in light of plaintiff's contract with NAPS which specifically provided that plaintiff would not be reimbursed for any expenses disallowed by OPM, this Court finds that plaintiff received all the process that was due.

## CONCLUSION

All of the plaintiff's claims arising before May 16, 1980, are time barred; all of the federal defendants are immune from suit for common-law torts; and all of the plaintiff's constitutional claims should be dismissed. All that remains of plaintiff's complaint are those common-law claims which arose after May 16, 1980, and which are asserted against the nonfederal defendants (Tinsley after his departure from OPM, NAPS and Mutual of Omaha). In light of the fact that no federal causes of action or federal defendants remain in the case, the Court will dismiss those remaining claims for resolution in the appropriate forum.[6] *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768 (D.C.Cir.1982). The Court will similarly dismiss NAPS' counterclaims.[7] The Court does not express any opinion as to the merits of any claims, defenses or counterclaims not dealt with in this Memorandum Opinion; rather, the Court simply decides that those issues should be adjudicated elsewhere.

Should plaintiff press his claims or NAPS its counterclaims elsewhere, the three-year statute of limitations shall be

---

6. The Court *sua sponte* dismisses the claims against Mutual of Omaha for the same reasons. *See supra* n. 1.

7. Though in its counterclaims NAPS alleges both federal question and diversity jurisdiction, neither is present. NAPS' counterclaims— breach of contract, conversion, failure to repay money owed, fraud, and breach of fiduciary

calculated from May 16, 1983, the date of filing in this court. The parties shall not assert that defense with respect to any claim arising in the period after May 16, 1980.

## ORDER

Based on the accompanying Memorandum Opinion, it is this 21st day of June, 1984,

## ORDERED

That all of plaintiff's claims arising before May 16, 1980, against all defendants are time barred and dismissed with prejudice.

That all of plaintiff's common-law claims against officials of OPM are dismissed with prejudice.

That all of plaintiff's constitutional claims against all defendants are dismissed with prejudice.

That plaintiff's remaining common-law claims are dismissed without prejudice. Such claims may be pursued in the appropriate forum.

That NAPS' counterclaims are dismissed without prejudice. Such claims may be pursued in the appropriate forum.

That should plaintiff or NAPS press the claims or counterclaims dismissed without prejudice, the defending shall be barred from asserting the statute-of-limitations defense with respect to any period after May 16, 1980.

That the complaint against all defendants and all counterclaims are dismissed in their entirety.

## ON MOTION FOR RECONSIDERATION

Plaintiff, Michael Burda, filed this action against the National Association of Postal

---

duty—are local, not federal in nature. As for diversity, NAPS, a citizen of the District of Columbia, in its counterclaim, ¶ 2, alleges "on information and belief" that plaintiff is a citizen of Florida. However plaintiff, in his complaint, ¶ 6.A, states that he is a "resident of the District of Columbia," indicating a lack of diversity.

Supervisors (NAPS), Mutual of Omaha, two current employees and one former employee of the Office of Personnel Management (OPM), alleging common-law and constitutional torts. On June 21, 1984, this Court dismissed *with* prejudice under the applicable statute of limitations, all claims arising prior to May 16, 1980; all common-law claims against the officials of OPM because of those officials' immunity; and all of plaintiff's constitutional claims. The Court dismissed *without* prejudice, for resolution elsewhere, all of plaintiff's common-law claims against the non-federal defendants arising after May 16, 1980, as well as NAPS' counterclaims. On July 2, 1984, plaintiff filed a motion for reconsideration. The Court now denies the motion.

For the most part, plaintiff's motion simply raises issues previously considered and rejected by this Court in its Memorandum Opinion. With respect to the issue of the statute of limitations, plaintiff has attached to his motion for reconsideration another affidavit in support of his argument that the statute of limitations should be tolled under the doctrine of fraudulent concealment. Specifically, in paragraph 9 of that affidavit plaintiff differs with the Court's conclusion, slip op. at 7, that the letter by defendant George MacWhorter, dated January 23, 1980, should have alerted plaintiff to the alleged conspiracy.

Even accepting, for the moment, plaintiff's argument with respect to that particular letter, plaintiff does not address any of the other considerations articulated by the Court requiring dismissal under the statutes of limitations. The Court found that other than the barest of allegations, plaintiff did not show how the conspiracy was concealed from him, nor what specifically occurred in the 1981 Superior Court litigation that suddenly revealed and shed light on the alleged conspiracy. In a lawsuit where the essence of plaintiff's claim appears to be defendants' failure to reimburse plaintiff for expenses incurred, plaintiff, in exercising due diligence, should have been alerted to some impropriety in April 1980 when his requests for reimbursement were partially denied. "The test of due diligence measures the plaintiff's efforts to uncover his cause of action against what a reasonable person would have done in his situation given the same information." *Richards v. Mileski*, 662 F.2d 65, 71 (D.C.Cir.1981). A reasonable person would have been alerted in April 1980 at the latest.

Equally meritless are plaintiff's arguments concerning the immunity of the defendants from suits alleging common-law torts. Plaintiff now attempts to circumvent the federal defendant's absolute immunity, contending that the common-law torts actually rise to the level of constitutional torts, from which federal defendants are only qualifiedly, not absolutely, immune. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Even accepting that rather strained argument, this Court ruled that there were no constitutional violations on the facts alleged by plaintiff. At 278–279. Thus, converting his common-law claims into meritless constitutional claims cannot help plaintiff or bolster his position.

Plaintiff seeks reconsideration of this Court's dismissal of his due process claim, arguing that he was not afforded the process that was his due. However, the Court finds that as a matter of law, the opportunities available to plaintiff, both before and after OPM's final decision to deny reimbursement, were sufficient process to satisfy the due process clause. *See, e.g., Jordan v. City of Lake Oswego*, 734 F.2d 1374 (9th Cir.1984).

In short, the Court denies plaintiff's motion for reconsideration in its entirety.

■ NAPS, though it did not file a motion for reconsideration, nonetheless, in its opposition to plaintiff's motion, also seeks a number of modifications of this Court's Memorandum Opinion. First, NAPS, a citizen of the District of Columbia, argues that there may exist diversity jurisdiction on its common-law counterclaims, which the Court dismissed without prejudice for lack of federal jurisdiction, and that consequently the Court should conduct a hearing to

determine plaintiff's citizenship. On July 20, 1984, plaintiff filed an affidavit declaring that he is a citizen of the District, with his motor vehicles registered in the District, and that he is a taxpayer and voter in the District. Given that affidavit, the Court finds that plaintiff is a citizen of the District of Columbia, and that diversity of citizenship is absent.

 Second, NAPS argues that this Court erred in applying the three-year limitation of D.C.Code § 12–301(8) to plaintiff's claim of intentional infliction of emotional distress. Instead, NAPS contends, that under *Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F.Supp. 542, 550–51 (D.D.C. 1981), *aff'd on other grounds*, 726 F.2d 774 (D.C.Cir.1984), *petition for cert. filed*, 52 U.S.L.W. 3922 (U.S. June 14, 1984) (No. 83–2052), the one-year limitation of D.C. Code § 12–301(4) applies. In *Hanoch*, plaintiffs' lawsuit stemmed from a terrorist attack on a bus in Israel; plaintiffs alleged, in part, assault, battery, false imprisonment, and intentional infliction of emotional distress. The Court held that those claims were barred by the one-year limitation of D.C.Code 12–301(4), which by its terms applies to "assault, battery ... [and] false imprisonment." The Court held that the one-year limitation applied even to the claim of intentional infliction of emotional distress—even though that cause of action was not specifically listed in D.C.Code § 12–301(4)—because that claim was dependent on "the same personal interests infringed by the intentional torts" that were subject to the one-year limitation. *Tel-Oren*, 517 F.Supp. at 550. Here, in contrast, the claim of emotional distress is intertwined with claims which fall within the three-year limitation. Thus, even the reasoning of the district court in *Tel-Oren* would result in the application of a three-year limitation to the emotional distress claim on the facts presented here.

Based on the foregoing, it is this 27th day of July, 1984,

### ORDERED

That plaintiff's motion for reconsideration is denied.

That this Court's Memorandum Opinion of June 21, 1984, is re-affirmed in all respects.