**John DOE, Plaintiff,**

v.

**Maharishi Mahesh YOGI, et al., Defendants.**

No. 85–2848.

United States District Court, District of Columbia.

Dec. 9, 1986.

See also 110 F.R.D. 629.

Gerald Ragland, Fairfax, Va., for plaintiff.

Dwight James, pro hac vice, Des Moines, Iowa, and John Ridge, Rockville, Md., for defendant World Plan Executive Council.

## MEMORANDUM

GASCH, Senior District Judge.

### I.  FACTS

In September of 1985, seven plaintiffs, John Does I thru VI and Jane Doe,[1] filed a complaint requesting relief for injuries related to their practice of transcendental meditation ("TM"), the "Science of Creative Intelligence," and "Sidhis." [2]  The parties which the plaintiffs claimed were responsible for their injuries are the Maharishi Mahesh Yogi ("Yogi"), the founder and spiritual leader of TM, the World Plan Executive Council, a nonprofit corporation that conducts business for the Yogi in the United States; and the Maharishi International University in Fairfield, Iowa, which provides courses of instruction in meditation and self-realization techniques purportedly developed by the Yogi.[3]

---

**1.**  In an opinion filed on November 22, 1985, the Court held that the plaintiffs could proceed pseudonymously.

**2.**  Unless otherwise specified, these practices will collectively be referred to as TM.

**3.**  These defendants will be referred to as the organization.

Trial is scheduled to commence on December 10, 1986. Only the claims of John Doe I will be tried on that date. That plaintiff claims that he began the practice of TM because of certain representations made by the defendants to the effect that the practice of TM was scientifically proven to reduce stress, improve memory, reverse the aging process, enable individuals to achieve their full potential, confer perfect health, reduce inner strife, purify the nervous system, better social relations, increase academic ability, expand awareness, result in personal enlightenment, and promote world peace. Moreover, in the Sidhis course, John Doe I claims that the defendants promised to teach him to "fly," or self-levitate, and to attain the ability to manipulate the physical world and the laws of nature.

In reliance on these representations, the plaintiff paid for a number of courses taught by the defendants. The plaintiff claims to have spent eleven years attempting to realize the benefits promised by the defendants. The plaintiff claims to have passed four of these years working full-time for the Yogi and his organization for little or no pay.

The plaintiff claims that as a consequence of enrolling in the Yogi's courses, he became dependent on the defendants. The plaintiff states that fear and intimidation were used by the Yogi to prevent him from discontinuing his involvement with TM, alienating him from his family and friends outside the TM milieu. The plaintiff asserts that these techniques resulted in, *inter alia*, severe emotional distress, lasting psychological injury, and, in the case of Sidhis, physical injury as a result of attempts to "fly."

John Doe I's complaint alleges fraud, negligence, breach of warranty[4] and intentional infliction of emotional distress. He claims that punitive damages are appropriate and requests redress in the amount of $9 million.

The defendants claim that summary judgment is appropriate to dispose of all of the plaintiff's claims.

## II. DISCUSSION

### A. *Standards Governing Motions for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure states the standard upon which all motions for summary judgment must be reviewed. The rule states, in pertinent part,

[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). This rule clearly embodies the black letter principle that summary judgment is appropriate when there is no genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party can demonstrate that no material facts are in dispute, it becomes the obligation of the party opposing the motion to prove that a material fact is in dispute. *See Greenberg v. FDA*, 803 F.2d 1213 (D.C. Cir.1986).

In *Celotex*, the Supreme Court held that summary judgment is an integral component of the federal rules, not merely a "procedural shortcut." *Celotex Corp., supra*, 106 S.Ct. at 2555. Nonetheless, the Court recognized in a companion case that courts should act with "caution" when granting such motions. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Al-

**4.** Subsequent to the filing of the defendants' motion for summary judgment, the plaintiff withdrew the claims in Count III and Count IV based on warranty theories. As such, the Court need not rule on the validity of these claims.

though this language indicates that the Supreme Court favors summary judgment in proper cases, in a subsequent decision, the United States Court of Appeals for the District of Columbia Circuit held that summary judgment is a "drastic remedy." *See Greenberg, supra,* at 1216. The Court understands these cases to stand for the proposition that summary judgment should only be granted in clear cases.

To assure that no person is deprived of his or her day in court, "the inferences to be drawn from the underlying facts contained in such materials [affidavits, depositions, and exhibits] must be viewed in the light most favorable to the party opposing the motion." *Anderson, supra,* 106 S.Ct. at 2513. In furtherance of this end, a trial court should not deny summary judgment where it believes that the better course is to proceed to trial. *Id.* When determining whether a reasonable jury could find for the non-moving party, judges must apply to themselves the same substantive evidentiary burden which would be imposed on a jury at trial. *Id.*[5]

### B. *Statute of Limitations*

The defendants would bar all of the plaintiff's claims on the basis of the applicable statute of limitations. In this Circuit, the choice of a statute of limitations is a substantive issue and therefore must be decided by the law of the forum. *See Steorts v. American Airlines, Inc.,* 647 F.2d 194, 196–97 (D.C.Cir.1981). The District of Columbia requires the claims brought by the plaintiff to be filed within three years from the time the cause of action accrued. D.C.Code Ann. § 12–301(8) (1981); *Burda v. National Association of Postal Supervisors,* 592 F.Supp. 273, 281 (D.D.C.1984), *aff'd,* 771 F.2d 1555 (D.C.Cir. 1985) (same limitations period applies to claims for intentional infliction of emotional distress). John Doe I filed his complaint on

September 9, 1985. Thus, to fit within the applicable limitations period, his cause of action must have "accrued" by September 8, 1982.[6]

The defendants first contend that John Doe I's cause of action accrued at the time he had his last official contact with them. On the basis of the plaintiff's answers to interrogatories, the defendants claim this date to be January of 1980— when the plaintiff took his last TM course. However, the plaintiff now claims to have recently uncovered evidence proving that his last course with the defendants was taken in January of 1983, placing him within the statutorily prescribed time limit. For the purpose of considering a motion for summary judgment, the Court must view the evidence in a light which most favors the party opposing the motion. As such, the Court is willing to accept the plaintiff's affidavit and so rejects the defendants' first argument. *See* Plaintiff's Affidavit II ¶ 2.

To circumvent the effect of this holding, the defendants claim, in the alternative, that the plaintiff's cause of action accrued when he knew, or should have known, that the injuries now claimed were linked to the practice of TM. In support of this theory, the defendants claim that in 1976 John Doe I became a teacher of TM. The defendants maintain that he could not simultaneously teach TM and yet have been ignorant of its potentially adverse effects.

The defendants' argument rests on the tenuous assumption that all teachers of TM both know enough about the practice to understand all its potential hazards and have the capacity to understand its deleterious effects on them personally. In *King v. Kitchen Magic, Inc.,* 391 A.2d 1184, 1186 (D.C.1978), the District of Columbia Court of Appeals held that in cases involving

---

**5.** Thus, for example, in a civil case where a jury would be required to apply the "clear and convincing" standard, a court must determine whether a reasonable jury applying this standard could find for the moving party.

**6.** John Doe I has not claimed exemption from the District of Columbia's statute of limitations on the ground that he is "non compos mentis." D.C.Code Ann. § 12–302(a)(2) (1981). Thus, the Court does not reach this question.

allegations of fraud, a cause of action does not accrue until "the fraud either is discovered or reasonably should have been discovered." The plaintiff claims to have discovered the fraud upon him in the fall of 1983. *See* Complaint at 13. The defendants' argument presupposes that the plaintiff, in due diligence, should have discovered the fraud at an earlier time. The test of due diligence judges a plaintiff's efforts to uncover his cause of action by a reasonable man standard. *See Richards v. Mileski*, 662 F.2d 65, 71 (D.C.Cir.1981). In all but the "most exceptional cases", this is a question best left to the trier of fact. *See Grigsby v. Sterling Drug, Inc.*, 428 F.Supp. 242, 243 (D.D.C.1975), *aff'd*, 543 F.2d 417 (D.C.Cir.1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977). In this case in particular the facts militate in favor of leaving this question for a jury. John Doe I claims to have been involved in a "alternative culture". Affidavit II, ¶ 9. Plaintiff claims that as a result of his exposure to this culture, he became psychologically impaired. In such circumstances, the Court declines to decide, as a matter of law, that a reasonable person in John Doe I's circumstances would certainly have detected fraud. As the Court of Appeals in this Circuit stated in *Mileski, supra*, 662 F.2d at 71,

> [T]hough the law of fraud does not endorse a hear no evil, see no evil approach, neither does it require that an aggrieved party have proceeded from the outset as if he were dealing with thieves.

*Id.* (citing to *Hudak v. Economic Research Analysts*, 499 F.2d 996, 1002 (5th Cir.1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975).[7]

## C. *Count I: Fraud*

John Doe I's complaint states that the representation made by the defendants that the practice of TM would lead to, *inter alia*, perfect health, eternal youth, the ability to manipulate the physical world, and the ability to fly, constitutes fraud. The District of Columbia Court of Appeals has defined the essential elements of fraud as follows:

> (1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) with the intent to deceive and (5) action taken in reliance upon the representation.

*Urban Investments, Inc. v. Branham*, 464 A.2d 93, 98 (D.C.1983). That court has also stated that a plaintiff's burden in such cases is to prove fraud by clear and convincing evidence. *Blake Construction Co., Inc. v. C.J. Coakley Co., Inc.*, 431 A.2d 569, 577 (D.C.1981). Thus, in keeping with the Supreme Court's recent pronouncement in *Anderson, supra*, 106 S.Ct. at 2513, the Court should grant summary judgment for the defendants if they can show that considering all the evidence before the Court in a light most favorable to the plaintiff, a reasonable jury applying the clear and convincing standard could not find for John Doe I.

In their motion for summary judgment, the defendants claim that John Doe I's fraud count cannot lie because all the defendants' representations were statements of opinion, not fact, and therefore cannot be the basis for an action in fraud. To support this proposition, the defendants invoke the body of case law associated with libel and the first amendment. According to the defendants, this case is "analogous" to cases involving freedom of speech in defamation and libel cases. To support this contention, the defendants misread an observation of the Third Circuit made in *In*

---

**7.** An alternative rationale upon which the court founds its conclusion that the statute of limitations has not run is stated in the case of *Alley v. Dodge Hotel*, 551 F.2d 442 (D.C.Cir.), *cert. denied*, 431 U.S. 958, 97 S.Ct. 2684, 53 L.Ed.2d 277 (1977). There, the Court of Appeals in this Circuit held that a party may be estopped from relying on the statute of limitations. *Id.* at 446. This rule applies when the party asserting the statute of limitations "has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run against him." *Id.* In the instant case, the Court holds that a reasonable jury could find that the defendants, by indoctrinating John Doe I into the process of TM, thereby lulled him into inaction.

re Grand Jury Matter, Gronowicz, 764 F.2d 983, 988 (3d Cir.1985), cert. denied sub nom. Gronowicz v. U.S., — U.S. —, 106 S.Ct. 793, 88 L.Ed.2d 770 (1986). In Gronowicz, the Third Circuit considered whether the first amendment should tolerate the enforcement of a grand jury subpoena duces tecum issued to determine whether statements made by an author, about his published book, violated the federal mail fraud statute. In determining whether the plaintiff's statements on the jacket cover could be considered fraud, the Court noted that the scienter requirement under the mail fraud statute was as strict as that required to prove libel. With regard to the scienter requirement, the Court stated, "no distinction having any first amendment significance can be made between libel, civil or criminal, and fraud, civil or criminal." Id. at 988. This quote does not, as the defendants suggest, support the broader proposition that the analysis applied in libel cases to distinguish facts and opinions may likewise be used in a fraud context.[8]

In this jurisdiction, the District of Columbia Circuit has created different analyses to demark fact and opinion in the areas of fraud and libel. Compare Ollman v. Evans, 750 F.2d 970 (D.C.Cir.1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985) (analysis in libel context) and Day, supra, 548 F.2d at 1026 (analysis in fraud context).[9] Thus, the appropriate standard for this situation is set out in the Day case. There, an attorney brought action against his law firm and its partners for, inter alia, misrepresentations allegedly made to him concerning a merger of the office, of which he was the senior partner, and the repercussions that merger would have upon him. In deciding the matter, the court stated several exceptions to the rule that opinions are generally not actionable in fraud. For example, the court held that fraud may be found when a speaker's statement is founded on an opinion or factual prediction which the listener is obviously incapable of interpreting or cannot verify because the facts necessary for such verification are unavailable to him. Moreover, an opinion concerning the happening of a future event may be fraudulent if the speaker knows of any fact that will prevent the occurrence of the event. Id. at 1026–27.

Viewing the evidence in a light most favorable to the plaintiff, it cannot be said that John Doe I is incapable of satisfying these standards by a showing of clear and convincing evidence. The record demonstrates that the defendants represented to the plaintiff that the likelihood of achieving certain goals had been scientifically tested. Whether the facts underlying these studies were available to the plaintiff is unclear. Moreover, it is unclear whether the plaintiff was capable of interpreting these studies. Finally, whether the plaintiff can prove that any individual in the defendants' organization knew that the plaintiff would not achieve the predicted results is un-

---

8. The conclusion that the standards applied in the fraud context should be different from those applied in the libel context is supported by the fact that in Day v. Avery, 548 F.2d 1018, 1026 (D.C.Cir.1976), cert. denied, 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977), the District of Columbia Circuit held that opinions stated in a fraud context are not protected per se. This decision was rendered after the United States Supreme Court's holding in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), which stated that opinions in the context of libel are absolutely protected:

We begin with the common ground. Under the first amendment there is no such thing as a false idea. However pernicious an opinion

may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

Id. at 339–40, 94 S.Ct. at 3007.

9. This distinction may be warranted on the ground that libel more often entails first amendment issues. Whether a statement is written or spoken, it surely deserves protection under the Constitution. However, this Circuit's use of different types of analysis emphasizes that the published word, because it is often disseminated, is deserving of closer scrutiny. Cf. Restatement (Second) of Torts §§ 538a–539 (defining opinion in the fraud context) and § 566 (defining opinion in libel context).

certain. All of these are questions best left to the trier of fact.[10]

### D. *Count II: Negligence*

The second count of John Doe I's complaint seeks recovery for alleged negligent conduct by the defendants. The plaintiff first believes himself entitled to damages for physical harm visited upon him by the practice of TM. At the very least, the plaintiff claims that the practice of "flying", which involves hopping in the lotus position, has damaged his legs. Second, the plaintiff contends that he was permanently psychologically damaged as a consequence of practicing TM. Finally, plaintiff claims that the defendants' negligence caused him emotional harm.

In their motion for summary judgment, the defendants correctly assert that the District of Columbia prohibits recovery for the negligent infliction of emotional harm without concomitant physical injury. *See Asuncion v. Columbia Hospital for Women*, 514 A.2d 1187, 1188–89 (D.C.1986). The plaintiff has not alleged that his emotional injuries resulted from even the slightest impact to his person. Thus, the plaintiff cannot recover for any emotional distress negligently visited upon him. This holding in no way undermines the plaintiff's right to recover for physical or lasting psychological injuries negligently caused by the defendants.

### E. *Count V: Intentional Infliction of Emotional Distress*

Unlike the action for negligent infliction of emotional distress, an action for intentional infliction of emotional distress may be proved in the District of Columbia even without an accompanying physical injury or impact. *See Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C.1980). To make out a claim of this sort, the plaintiff must prove:

(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'

*Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.1982) (citing to Restatement (Second) of Torts § 46 (1965)). To satisfy this standard, the plaintiff must demonstrate that the defendants' actions were calculated to cause emotional distress and an attendant risk of physical injury. *Waldon, supra*, 415 A.2d at 1078. Cases which state a cognizable cause of action under this theory often involve a practical joke, the intent of which and effect of which will not be tolerated in civilized society. *See Waldon, supra*, 415 A.2d at 1077 (providing examples of successful claims).

To recover on this theory, the plaintiff must prove by a preponderance of the evidence that the defendants' acts were calculated to cause him emotional harm and an associated risk of physical injury. Even viewing the evidence adduced in a manner most favorable to the plaintiff, no reasonable jury could find that the elements of this tort are satisfied. All the cases cited to the Court which have granted this relief have relied upon some discrete incident which shocked the conscience. The plaintiff nowhere demonstrates that any particular incident, which transpired between him and the defendants, is of this quality. Moreover, the plaintiff has cited no case law to support the proposition that a continuing injury can rise to the level of outrageousness necessary to constitute inten-

---

**10.** As an alternative constitutional ground for summary judgment, the defendants claim that adjudication of the instant dispute would involve the Court in an impermissible interpretation of religious doctrine. More specifically, the defendants claim that in this lawsuit the plaintiff is asking the Court to determine the validity of the defendants' interpretation of the Shankaracharaya tradition. For support, the defendants cite *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). In *Hull Church*, the

Supreme Court held that civil issues must be decided without involving underlying controversies of *religious* doctrine. *Id.* at 449, 89 S.Ct. at 606 (emphasis added). The Court does not dispute this proposition. However, the defendants freely admit that TM is not a religion. Defendants' Motion for Summary Judgment at 11. The defendants cite to no case which has extended the *Hull Church* rule to situations which do not involve religious doctrine. As such, the defendants' reliance on the *Hull Church* opinion is misplaced.

tional infliction of emotional distress. Finally, the plaintiff has brought forth no evidence to prove that the actions of the defendants were motivated by an intent to inflict emotional harm on the plaintiff. As such, Count V of the plaintiff's complaint is hereby dismissed.

### F. *Supplemental Defenses*

### 1. *Medical Causation*

■ In his complaint, the plaintiff asserts injury to both his mind and body. The defendants argue that the Court must dismiss all of the plaintiff's causes of action on the ground that the plaintiff has not indicated the ability to prove medical causation by testimony of a qualified medical professional. The short answer to this contention is that since the drafting of the defendants' motion for summary judgment, the Court has allowed the plaintiff to take the depositions of two doctors: Dr. Margaret Singer and Dr. Gary Glass. The plaintiff claims that both of these physicians will testify that John Doe I's psychological injuries stem from the practice of TM. *See* Plaintiff's Statement of Material Facts Not in Dispute at 5–6. Thus, giving the plaintiff the benefit of the doubt, as the Court must, John Doe I can prove causation.

Even if that were not the case, the Court would still be unwilling to require causation to be proved by way of expert testimony. In the District of Columbia, expert testimony has been required in cases where the subject matter dealt with is "so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman." *District of Columbia v. Barriteau*, 399 A.2d 563, 568 (D.C.1979). Application of this rule generally requires the use of experts in at least medical malpractice cases and cases involving the complexities of economics. *Id.* at 569. Nonetheless, the decision to require expert testimony lies within the sound discretion of the trial court. *Id.* at 568; *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C.1978). To act within its discretion, a trial court must decide whether expert testimony would "aid the trier of fact

in the search for truth." *Davis, supra*, 386 A.2d at 1200. The Court is not convinced that the requirement of expert testimony in the instant case would serve such a salutary function. The defendants have cited to no case indicating that the causation of psychiatric injuries must be proved by expert medical testimony. *See* Defendants' Motion for Summary Judgment at 19. Given the unusual facts of this case and the nature of the plaintiff's injuries, the Court is unwilling at the present time to rule, as a matter of law, that the plaintiff must prove his case through the use of experts.

### 2. *Duplicative Recovery*

■ In *Franklin Investment Co. v. Smith*, 383 A.2d 355 (D.C.1978), the District of Columbia Court of Appeals stated the elementary proposition that damages for a single injury can only be recovered once, even though two or more wrongs may have caused the injury. *Id.* at 358. The defendants claim that in this law suit the plaintiff impermissibly seeks to recover a second time for injuries that he was already compensated for in an earlier law suit. Indeed, eleven months prior to the filing of the instant case, the plaintiff settled a law suit against Gimbel's Department Store and a private individual for injuries sustained in Gimbel's bathroom, where plaintiff was struck in the center of his forehead with the edge of a stall door. In the earlier law suit, the plaintiff claimed the following injuries:

> ringing sensations in both ears, loss of hearing in his left ear, headaches, temporary loss of vision and periodic permanent balance loss, the high frequency sensorineural hearing loss secondary to head trauma on the left side, dizziness and positional displacement of the calcite granules of the neuro-epetherium in the inner ear ... serious psychological symptomatology.

*See* Gimbel's Complaint at 3–4. The defendants claim that the injuries claimed to have been sustained by the plaintiff through his practice of TM are the same injuries which were claimed in the law suit

against Gimbel's. From this premise, the defendants reason that since John Doe I recovered in the earlier law suit, he has been fully compensated for any injuries and therefore may not recover in the instant case.

The defendants' argument is founded on two faulty premises. First, the defendants have not proved that the injuries claimed in the case at bar mirror the injuries claimed in the case against Gimbel's. Any overlapping injuries for which the plaintiff did recover in his earlier law suit would properly be excludible in this case. However, the defendants cannot produce such evidence, for, the case brought by John Doe I for injuries sustained in Gimbel's Department Store was settled. Thus, the exact claims for which the plaintiff has been compensated were not disclosed. In such a situation, *Franklin Investment Co.* does not purport to bar recovery. *Id.* at 358. Evidence that the plaintiff has previously filed suit for similar injuries may yet work to the benefit of the defendants, but such evidence will not, under the circumstances in this case, suffice as a rationale for summary judgment.

### 3. *New Claims*

 The defendants claim that the plaintiff's first amended pretrial statement is an attempt to introduce two new claims for relief: (1) recovery for changing a person's beliefs and (2) recovery for thought reform. To date, the plaintiff has not moved this Court to amend his complaint. As such, plaintiff may only introduce evidence at trial to prove those counts of his original complaint still extant after today's rulings.

However, throughout this law suit, the plaintiff has claimed that the defendants and TM changed his beliefs and promoted thought reform. *See* Plaintiff's Complaint, ¶¶ 32, 33, 34, 50(*l*) To the extent that evidence of such practices can be used to prove either fraud or negligence on the part of the defendants, such evidence will be admissible.

## III. CONCLUSION

In sum, trial will go forward but the plaintiff will only be permitted to try the following claims: (1) fraud and (2) negligence. Additionally, the plaintiff may not put on evidence to recover damages for negligent infliction of emotional distress.

### ORDER

Upon consideration of defendants' motion for summary judgment, the memoranda of points and authorities in support thereof and in opposition thereto, the entire record herein, including oral argument, and for the reasons stated in the accompanying memorandum, it is by the Court this 9th day of December, 1986,

ORDERED that the defendants' motion is granted to the extent that the plaintiff may not recover for negligent infliction of emotional distress or intentional infliction of emotional distress; and it is further

ORDERED that the defendants' motion is denied in all other respects.