**Donald ROCHON, et al., Plaintiffs,**

**v.**

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**Civ. A. No. 87–3008.**

United States District Court, District of Columbia.

Aug. 11, 1988.

David Kairys, Adam Thurschwell, and, on brief, David Rudovsky, Kairys & Rudovsky, Philadelphia, Pa., Cynthia L. Estlund, Washington, D.C., Allan R. Stein, Rutgers Law School, Camden, N.J., of counsel, for plaintiffs.

David M. Glass, Dept. of Justice, Brook Hedge, Branch Director, Dept. of Justice, and, on brief, James M. Spears, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D.C., for defendants F.B.I., Dept. of Justice, Meese, Sessions, and Reynolds.

Brian P. Gettings, Frank W. Dunham, and, on brief, Charles S. Russell, Jr., Cohen, Gettings, Alper, & Dunham, Arlington, Va., for defendants Hawkins, Santimauro, and Sharp.

Earl J. Silbert, Patricia Maher, and, on brief, Paul L. Colby, Schwalb, Donnenfeld, Bray, & Silbert, P.C., Washington, D.C., for defendants Mawn, Rarity, Koletar, and Dean.

William G. Hundley, and, on brief, Larry S. Gondelman, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for defendants Hegarty, Wilson, and Ahlerich.

J. Frederick Sinclair, and, on brief, Gerald Bruce Lee, Cohen, Dunn & Sinclair, Alexandria, Va., for defendants Webb and Groover.

Plato Cacheris, Sydney Hoffman, and, on brief, Stephen Bogorad, Dunnells, Duvall, Bennett & Porter, Washington, D.C., for defendants Blitzer, Stapleton & Wiley.

Edwin C. Brown, Jr., Brown, Brown & Watkins, Alexandria, Va., for defendants Evans and Harp.

Michael J. Riselli, Riselli & Pressler, Washington, D.C., for defendants Kempf and McGee.

John R. Keys, Winston & Strawn, Washington, D.C., Daniel Webb and Bernard Bobber, Winston & Strawn, Chicago, Ill., for defendant Dillon.

Patricia Douglass, Washington, D.C., for defendant Miller.

Patricia Douglass, Washington, D.C., Scott R. Lassar and, on brief, Kevin Totis, Karon, Savikas & Horn, Chicago, Ill., for defendant Veach.

## OPINION

CHARLES R. RICHEY, District Judge.

### Introduction

The allegations in this complaint are repugnant and chilling. Plaintiffs, a black Federal Bureau of Investigation ("FBI") agent and his wife, charge that FBI field agents and supervisors for more than three years committed or condoned frequent acts of racial harassment against them. This harassment allegedly included hate mail, obscene phone calls, assault and battery, death threats as well as threats of castration, mutilation, sodomy, and rape, and the use of pictures and defaced photographs (including a photograph of plaintiffs' children) in what plaintiffs allege amounted to a campaign of ostracization and intimidation.[1] It also included a campaign of forging plaintiff Donald Rochon's name to an insurance policy against death and dismemberment and to requests for more than $1000 of mail-order merchandise.[2] *Amended Complaint*, ¶¶ 9–11, 14–73.

---

[1]. To this day, and even in this Court, some defendants refer to the actions directed at plaintiffs (many of which were documented by the EEOC and Department of Justice reports on the harassment in the Omaha office) as "pranks." This utter lack of sensitivity is almost as disturbing as the alleged acts themselves. The Court hereby warns defendants that a modicum of decency is expected of all those who file pleadings in this Court and that respect for the law and the rights of others is the rule governing conduct and speech in a court of law.

[2]. In a sworn statement made during an internal Department of Justice investigation, defendant Gary Miller admitted forging Donald Rochon's name to the life insurance policy and merchandise requests. He also stated that he and others, including defendant Thomas Dillon, together discussed committing these acts of forgery and "having [Rochon's] public utilities turned off." *Supplemental Submission in Support of Plaintiffs' Response to Official Defendants' Reply Memorandum*, Exhibit A, at 1.

Plaintiff Donald Rochon allegedly experienced other forms of harassment as well. He claims not only that he was ostracized at his FBI office but that he was continually the butt of racist stories, told inside and outside the office, that demeaned his physical characteristics and intelligence. *Id.* at 15i–j, 19, 20. Moreover, despite the fact that Donald Rochon has allegedly always received "very positive performance evaluations," he allegedly was the target of rumors and incredible stories attacking his competence and trustworthiness as an FBI agent. *Id.* at ¶ 21.

Plaintiffs allege that FBI supervisors condoned these incidents and refused to investigate Donald Rochon's complaints of discrimination. *Id.* at ¶¶ 17–18, 29, 36, 41, 43–44, 48–49. Instead, they claim, FBI field supervisors and Headquarters personnel retaliated against him by transferring him against his will from Omaha to Chicago and formally censuring him for failing to report suspicions that he had been the victim of a crime. *Id.* at ¶¶ 30–33.

Plaintiff Donald Rochon has pursued these claims administratively. Both the EEOC and the Department of Justice found in his favor on his Title VII complaint about treatment in the Omaha office.

*Complaint*, Exhibits A and B. Donald Rochon has filed two other EEO charges, which have been stayed at the request of the Department of Justice. *Amended Complaint*, ¶ 62. Plaintiffs claim that high-ranking officials at the Department of Justice deliberately stymied these EEOC investigations by falsely stating that the Department of Justice was conducting a criminal investigation of the same events. *Id.* at ¶¶ 55–58.

Plaintiffs are suing the individual field agents, their supervisors, the personnel at FBI headquarters who played a role in Mr. Rochon's transfer and censure, and, in their official capacities only, Attorney General Meese, FBI Director Sessions, and Assistant Attorney General William Bradford Reynolds.[3] More precisely, plaintiffs allege that defendants' conduct violated Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1985, and the First, Fourth, and Fifth Amendments to the Constitution. Plaintiffs also charge defendants with intentional infliction of emotional distress, outrageous conduct[4], invasion of privacy, assault and battery, negligence, negligent supervision, gross negligence, and negligent hiring.[5]

3. In the Amended Complaint, plaintiffs state that they are suing defendants Meese and Sessions only in their official capacities. *Amended Complaint*, ¶ 5i. Plaintiffs also state that they are suing defendant Reynolds "only in his official capacity based on the evidence and information presently available to plaintiffs." *Id.* at ¶ 5g. Although statements in subsequently filed papers suggest that plaintiffs wish to sue defendant Reynolds in his individual capacity as well, *see Plaintiffs' Supplemental Memorandum in Opposition to Motion to Dismiss Defendants Department of Justice, FBI, Meese, Sessions, and Reynolds,* at 1, plaintiffs must amend their complaint in order to do so.

The Court must note another point along these lines. From the language in the Amended Complaint, it appeared that plaintiffs were asserting claims under the Constitution, state common law, and 42 U.S.C. § 1985 against the officially named defendants and the defendant agencies. Plaintiffs have stated, however, that only arguments about Title VII claims are relevant to these defendants, as "they are sued only in their official capacities regarding Title VII and equitable relief." *Memorandum in Opposition to Motion to Dismiss of Defendants Department of Justice, Federal Bureau of Investigation,*

*Meese, Sessions, and Reynolds,* at 1. Accordingly, the Court will assume that plaintiffs consent to dismissal of Counts I (constitutional tort), III (42 U.S.C. § 1985), and IV (common law tort) against defendants Department of Justice, FBI, Meese, Sessions, and Reynolds.

4. At oral argument on the pending motions, plaintiffs' counsel could not identify the elements of the tort of "outrageous conduct." The Court has determined that under the laws of Nebraska and Illinois, the states where the alleged common law torts (at least) largely occurred, *Amended Complaint,* ¶ 73, "outrageous conduct" is merely another name for the tort of intentional infliction of emotional distress. *See, e.g., Robertson v. Travelers' Insurance Co.,* 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866, 868 (1983); *Paasch v. Brown,* 199 Neb. 683, 260 N.W.2d 612, 614 (1977). Accordingly, the Court will dismiss the "outrageous conduct" claim as superfluous.

5. The Court must note, as an initial point, that plaintiffs' complaint is far from discretely pleaded. For instance, the Title VII count and the § 1985 count charge that defendants violated

Defendants have moved to dismiss all of these claims and have advanced a host of reasons why plaintiffs' complaint is inadequate. The Court has considered the motions, the opposing memoranda of law, and the underlying law carefully, as it has carefully examined the points raised at oral argument. The Court will grant those motions in part and will deny them in part.

Specifically, the Court has concluded that it must deny the motion to dismiss the Title VII claim against the head of plaintiff Donald Rochon's agency.[6] It must also, given the complaint now before the Court, dismiss the counts seeking relief under the Constitution and 42 U.S.C. § 1985, but will do this without prejudice. In addition, the Court must dismiss the common law claims against all but defendants Miller, Veach, and Dillon. Most of these dismissals are similarly without prejudice; the exceptions are the statute of limitations-based dismissals of the common law claims against defendants Kempf, McGee, and Webb, and the assault and battery claim against defendant Veach, which will all be dismissed with prejudice.

Finally, the Court will defer ruling on whether venue is proper in this jurisdiction and will ask for additional briefs on that subject. The Court will allow plaintiffs to conduct discovery on whether this Court has personal jurisdiction over the remaining individually named defendants, but it will defer such discovery until it resolves the venue question. The Court expects that this limited discovery will require no more than thirty to sixty days.

## THE COURT WILL NOT DISMISS PLAINTIFF DONALD ROCHON'S TITLE VII CLAIM.

In this suit, plaintiff Donald Rochon seeks an Order enforcing the administrative decision upholding his complaint of discrimination in the Omaha FBI office. In addition, he seeks other remedies to which he may be entitled for race discrimination in violation of Title VII. Over plaintiffs' opposition, the agency defendants have moved to dismiss Donald Rochon's Title VII claim. This motion must be denied.

■ First, defendants argue that Mr. Rochon has received all the relief ordered in the final decision in his favor, and, as a result, the claim is moot. This is not so.

For one, despite defendants' contrary arguments, plaintiff may be entitled not merely to the relief he obtained at the administrative level but to other remedies, such as an injunction against further acts of discrimination. This is a typical, but not mandatory, remedy for a victim of unlawful employment discrimination. *See, e.g., Johnson v. Brock,* 810 F.2d 219, 225 (D.C. Cir.1987).

The Court is empowered to enjoin defendants from further discriminatory acts if, on the facts of the case, there is "reason to believe that the discriminatory conduct could recur." *Id.* If so, an injunction would be fully in keeping with the Court's

---

the rights of "plaintiff Rochon," but there are two "plaintiffs Rochon" and the Court and defendants should not be expected to intuit which plaintiff Rochon is named in those counts. Moreover, the constitutional count simply states that "defendants' acts and conduct violate plaintiffs' rights pursuant to the First, Fourth and Fifth Amendments to the Constitution of the United States," but it never alleges which elements of those constitutional rights were violated or, in particular, how the manifold factual allegations affected each plaintiff's constitutional rights. While these shortcomings are not necessarily reason to dismiss the complaint, *see Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957), *but see* 1557–58 *infra,* they suggest that the complaint is far from the short and plain statement of plaintiffs' claims for relief required by Fed.R.Civ.P. 8.

6. All defendants except Meese and Sessions have moved to dismiss the Title VII claim against them. Plaintiffs concede that the head of the department or agency where Donald Rochon works is the only appropriate defendant to a Title VII suit. *See Plaintiffs' Opposition to the Individual Defendants' Motions to Dismiss* at 1; *see also, e.g., Davis v. Califano,* 613 F.2d 957, 958 n. 1 (D.C.Cir.1979). Accordingly, the Court will, as it must, dismiss the Title VII claim against all but the Attorney General, the head of the agency at which Mr. Rochon is employed. *See* Fed.R. Civ.P. 25(d)(2) (public officer sued in his or her official capacity may be described by title rather than name).

"duty to render a decree which will so far as possible eliminate the discriminatory effects of the past ... [and] bar like discrimination in the future." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (*quoting Louisiana v. United States,* 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965)).

At this preliminary juncture, the Court cannot tell whether an injunction would be an appropriate remedy should plaintiff prevail on his Title VII claim. On a motion to dismiss, however, the Court may only consider whether plaintiff could prove a set of facts that would justify imposing an injunction. 5 C.A. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1357. Given the allegations detailed in the complaint, the Court cannot conclude that an injunction is outside the relief potentially available to this plaintiff. As such, plaintiff's Title VII claim is not moot.[7]

■ Defendants also claim that Mr. Rochon must exhaust administrative remedies before he may ask the Court to enforce the agency's administrative decision in his favor. The Court must reject defendants' argument.

Defendants rely on new EEOC regulations that for the first time provide an administrative remedy for plaintiffs who challenge agency implementation of EEOC relief. Those regulations provide in pertinent part that "[a] complainant may petition the Commission for enforcement of a decision under the Commission's appellate jurisdiction." 29 C.F.R. § 1613.238(a), *reprinted at* 52 Fed.Reg. 41,928 (Oct. 30,

1987). Defendants maintain that, despite the apparently permissive nature of this administrative enforcement, the regulations mandate that a complainant pursue administrative relief before going to court. Regardless of whether the new administrative procedure is mandatory or permissive, it does not foreclose plaintiff's Title VII claim.

The regulations were made effective on November 30, 1987, which was more than three weeks *after* this suit was filed. Thus, on their face the exhaustion requirement appears inapplicable to the instant case. Defendants assert, however, that these regulations were intended to apply even to suits filed before the regulations went into effect.

They base this argument on an implication that allegedly flows from an exception to the effective date. Under that exception, certain specified sections of the regulations "shall apply where the civil action was filed after the effective date of these regulations." *Id.* at 41,920. As the regulations concerning enforcement of final EEOC decisions were not among those that apply only to lawsuits filed after the regulations take effect, defendants maintain that the new administrative procedures apply regardless of when a complainant files suit.

This argument is belied by the regulations themselves. The sections that "apply where the civil action was filed after the effective date of the[ ] regulations" concern grounds for rejecting an administrative complaint because of the pendency of a

---

7. There is at least one additional reason for rejecting defendants' mootness argument. The Court is not convinced that defendants have fully implemented the relief ordered by the Department of Justice. In its final decision, the agency ordered the FBI to "determine which personnel ... require EEO training concerning racial slurs and treatment of minority employees, and promptly provide them with such training" or explain why it is unnecessary. *Amended Complaint, Exhibit B* (Department of Justice Final Decision), at 13. According to affidavits provided by the agency, those personnel have been required to attend a standard OPM course entitled "Role of Supervisors and Managers in EEO" that appears to be nothing more than a

primer on a manager's role in the EEO process. *E.g.,* Jeter Declaration, ¶ 6(b). Plaintiff argues that this course does not amount to the special training required by the agency's decision, and, as far as the Court can tell from the record now before it, plaintiff may be right.

Defendants' affidavits have put their motion in an awkward procedural posture. Under Fed. R.Civ.P. 12(b)(6), the Court must convert their motion to one for summary judgment if it considers any material outside the pleadings. Accordingly, the Court will treat defendants' motion as a motion to dismiss or, in the alternative, for summary judgment, and it will deny them both. *See Federal Practice and Procedure: Civil* § 1366.

lawsuit. *See* §§ 1613.215(a)(3), 1613.283, 1613.513, 1613.604(i), and 1613.643, *reprinted at* 52 Fed.Reg. 41,923, 41,930–31, 41,933. The clear intention was to prevent a plaintiff from simultaneously pursuing both administrative and judicial remedies. *Id.* These exceptions to the effective date of the regulations simply do not support an argument that the regulations were designed to force litigants already in court to return to the administrative process for enforcement of EEOC decisions.

Indeed, defendants' argument, taken to extremes, would mean that a litigant who has diligently pursued judicial enforcement of an administrative decision must regard the lawsuit as a dead loss and return to the administrative process, even if the suit has gone to trial and a decision is imminent. As neither logic nor equity supports this contention, and as the regulations were specifically made effective after the date on which this suit was filed, the Court will not adopt defendants' suggestion. Instead, the Court finds that Donald Rochon may in this suit seek enforcement of the favorable administrative decision on his complaint of discrimination in the Omaha office of the FBI.

In short, defendants' arguments are unavailing. The Court will deny, without prejudice, the "official defendants'" motion to dismiss plaintiff Donald Rochon's Title VII claim.

## ON THE BASIS OF THIS COMPLAINT, THE COURT MUST DISMISS PLAINTIFF DONALD ROCHON'S CONSTITUTIONAL AND CONSPIRACY CLAIMS AS PREEMPTED BY TITLE VII.

All defendants argue that Title VII is the exclusive remedy for the actions of which plaintiffs complain. For support, they point to *Brown v. General Services Administration,* where the Supreme Court stated that Title VII was the "exclusive remedy" for a federal employee's claim of race discrimination in employment. 425 U.S. 820, 825, 96 S.Ct. 1961, 1964, 48 L.Ed. 2d 402 (1976).

■ This apparently broad command of preemption is not, however, the precise holding of the case. Instead, *Brown* held that Title VII preempted a federal employee's § 1981 challenge to the government's failure to promote him. Accordingly, *Brown* stands for the proposition that Title VII preempts other remedies for discrimination in federal employment *only* when the federal employee is challenging action directly and singularly related to discrimination in the terms and conditions of his or her employment. *See, e.g., Lawrence v. Staats,* 665 F.2d 1256 (D.C.Cir.1981) (per curiam) (evaluations and other employment practices); *Richardson v. Wiley,* 569 F.2d 140 (D.C.Cir.1977) (promotions); *see also, e.g., White v. General Services Administration,* 652 F.2d 913, 917 (9th Cir.1981).

Put more precisely, where a plaintiff alleges facts that are actionable under Title VII and for which Title VII provides a remedy, Title VII preempts virtually all other federal causes of action [8] that provide consistent theories of relief.[9] *See, e.g., see, e.g., Kizas v. Webster,* 707 F.2d 524 (D.C. Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984) (preempting due process challenge to non-promotions) *Gissen v. Tackman,* 537 F.2d 784 (3d Cir.1976) (en banc) (preempting suit under §§ 1981, 1983, 1985, and 1986 for discrimination in promotions) *DiMaggio v. United States Postal Service,* 643 F.Supp. 1 (D.Conn.1984) (preempting retaliation suit

**8.** Title VII does not, for example, preempt suit under the Equal Pay Act. *See, e.g., Thompson v. Sawyer,* 678 F.2d 257 (D.C.Cir.1982); *Laffey v. Northwest Airlines,* 567 F.2d 429, 445 (D.C.Cir. 1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

**9.** At least one court has stated that Title VII's preemptive effect would not prevent a plaintiff from basing an *inconsistent* federal cause of action on the same conduct that forms the basis

for a Title VII suit. *Langster v. Schweiker,* 565 F.Supp. 407, 414 (N.D.Ill.1983). In *Langster,* the Court noted that nothing in *Brown v. General Services Administration* or the legislative history of the Equal Employment Opportunity Act of 1972 suggested that a plaintiff could not plead "different but contradictory theories for relief" along with, and in the alternative to, a Title VII claim. *Id.*

**1556**

under § 1985); *DuVall v. Postmaster General*, 585 F.Supp. 1374, 13 (D.D.C.1984), *aff'd*, 774 F.2d 510 (D.C.Cir.1985) (preempting fifth amendment claim for retaliation).

■ In other cases, however, courts have held that Title VII does not preempt independent bases for suit. Most obviously, where a claim under the Constitution, another federal statute, or state law could not be remedied under Title VII, there is no preemption problem. *See, e.g., Ethnic Employees of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 & n. 15 (D.C.Cir.1985) (no preemption of charge EEOC could not investigate). Similarly, where a Title VII claim is based on a completely different occurrence or set of facts from those on which the other claim is based, and the claims are joined for convenience only, Title VII has no preemptive effect. *See, e.g., Langster v. Schweiker*, 565 F.Supp. 407 (N.D.Ill.1983). Finally, Title VII does not preempt "additional relief under common-law tort theory to compensate for harms above and beyond discrimination which Title VII does not seek to remedy." *Stewart v. Thomas*, 538 F.Supp. 891 (D.D.C.1982).[10]

■ These principles determine the decision on defendants' preemption argument. Because the complaint states that every fact alleged is the basis of both Donald Rochon's Title VII claim *and* his claims under § 1985 and the Constitution, the Court cannot segregate the factual predicate for the Title VII action from the factual predicate for these other claims. *See Amended Complaint*, ¶¶ 68, 70, and 72. As such, the Court *must* at this time conclude that Donald Rochon's claims arising under Title VII (Count II of the Amended Complaint), the Constitution (Count I of the Amended Complaint) and 42 U.S.C. § 1985 (Count III of the Amended Complaint) are not based on distinct wrongs but are all based upon conduct actionable under Title VII. *See, e.g., Jarrell v. Tisch*, 656 F.Supp. 237 (D.D.C.1987); *Rottman v. United States Coast Guard Academy*, 630 F.Supp. 1123, 1125 (D.Conn.1986). Accordingly, the Court will dismiss these claims raised by plaintiff Donald Rochon, without prejudice.

■ The remaining count of the Amended Complaint, which charges the individually sued defendants with a variety of common law torts, is not completely insulated from this same defect. From the imprecisely pleaded complaint, it is difficult to discern the discrete basis of plaintiff Donald Rochon's common law tort claims. Unlike the *Bivens* and § 1985 claims, though, the particular common law torts alleged appear to be based not on plaintiff's right to be free from discriminatory treatment with respect to the terms and conditions of his employment but on his "right to be free from bodily or emotional injury caused by another person." *Stewart v. Thomas*, 538 F.Supp. at 895; *see also, e.g., Otto v. Heckler*, 781 F.2d 754, 756 (9th Cir.), *amended on other grounds*, 802 F.2d 337 (9th Cir. 1986). Accordingly, the Court will deny, without prejudice, defendants' motion to dismiss Donald Rochon's common law claims on the grounds of preemption.

## PLAINTIFF SUSAN ROCHON HAS STANDING TO SUE FOR INJURIES SHE ALLEGEDLY EXPERIENCED.

■ Defendants maintain that Susan Rochon's claims must be dismissed because either she has not suffered any injury or her injury does not rise to a compensable level.[11] In this, however, defendants are

---

**10.** In *Stewart v. Thomas*, the Court permitted a federal employee to challenge "hostile environment" sexual harassment under Title VII and to raise an intentional infliction of emotional distress claim as well. Defendants argue that *Stewart* is no longer good law, and that Title VII would today preempt the tort claim, in light of the Supreme Court's subsequent recognition that plaintiffs may bring a "hostile environment" sexual harassment suit under Title VII. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The trouble with this argument is that non-economic sexual harassment was actionable in this Circuit before *Stewart v. Thomas* was decided. *See Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981). Accordingly, *Meritor Savings Bank* did not change the law of this Circuit, and the well-reasoned *Stewart* opinion remains persuasive.

**11.** It was not clear from the complaint whether plaintiff Susan Rochon was attempting to assert a Title VII claim in this suit. As plaintiffs state elsewhere that Susan Rochon has "valid claims"

wrong, and their motion to dismiss plaintiff Susan Rochon from this suit will be denied.

Consistent with Article III's command that the federal judiciary adjudicate only "actual cases or controversies," plaintiff Susan Rochon has standing to sue only if she has suffered "some threatened or actual injury resulting from the [defendants'] putatively illegal action." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). Specifically, plaintiff must allege that defendants' conduct led to or threatens some injury that the Court is capable of redressing. *E.g., American Association of Travel Agents, Inc. v. Blumenthal*, 566 F.2d 145, 155 (D.C.Cir.1977), *cert. denied*, 435 U.S. 947, 98 S.Ct. 1533, 55 L.Ed.2d 546 (1978).

The complaint alleges that defendants Dillon, Kempf, McGee, Webb, and Miller made harassing phone calls to plaintiffs' home. *Amended Complaint*, at ¶¶ 15c, 35b.[12] Regardless of whether Susan or Donald Rochon was the direct target of those calls, there can be no question but that Susan Rochon has alleged an "injury in fact" from those calls. Similarly, Susan Rochon has alleged an actual injury from the insurance policy and mail orders for merchandise allegedly forged by defendant Miller, *id.* at ¶ 38, and from the anonymous rape threats allegedly made by defendants Miller, Dillon, and Veach, *id.* at ¶¶ 35d, 42. On the basis of these and other allegations in the Complaint, there can be no doubt that defendants' conduct allegedly caused a concrete injury to Susan Rochon's constitutional, statutory, and common law rights, and it is an injury that the Court is capable of redressing. Accordingly, plaintiff Susan Rochon has standing to sue. *See, e.g., Heckler v. Mathews*, 465 U.S. 728, 738, 104 S.Ct. 1387, 1394–95, 79 L.Ed.2d 646 (1984). This, however, is only the beginning of the Court's inquiry into the propriety of the claims alleged by Ms. Rochon.

THE COURT MUST DISMISS PLAINTIFF SUSAN ROCHON'S CONSTITUTIONAL TORT CLAIMS.

[redacted] Defendants have moved to dismiss the constitutional tort claims (Count I) on the grounds of qualified immunity. Qualified immunity shields "[g]overnment officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established ... rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Anderson v. Creighton*, — U.S. —, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) ("contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.")

Claims arising under the Constitution are subject to a qualified immunity defense and, in this Circuit, must meet a "heightened pleading standard." *See, e.g., Martin v. Malhoyt*, 830 F.2d 237, 253 (D.C.Cir.), *reh'g denied*, 833 F.2d 1049 (D.C.Cir.1987). Accordingly, where, as here, a government official is accused of acting with unlawful motive, the complaint must contain "nonconclusory allegations of evidence of [unconstitutional] intent ... [which] need not be extensive but must be sufficiently precise to put defendants on notice of the nature of the claim and enable them to prepare a response and, where appropriate, a summary judgment motion on qualified immunity grounds." *Hobson v. Wilson*, 737 F.2d 1, 29 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d

only under the Constitution, § 1985, and the laws of Nebraska and Illinois, *Plaintiffs' Memorandum in Opposition to the Motions to Dismiss of the Individual Defendants*, at 66, the Court will presume that plaintiff Susan Rochon is not asserting a Title VII claim. (Indeed, as the complaint does not allege that Susan Rochon was employed by any defendant to this suit, there is no basis for a Title VII claim by her against these defendants.) In light of these findings, Susan Rochon's claims are obviously not preempted by Title VII.

**12.** Another of the complaint's flaws is that plaintiffs do not precisely identify which defendants (if any) allegedly committed the various acts of which plaintiffs complain. Nonetheless, reading the complaint broadly and in the light most favorable to plaintiffs, as the Court must on a motion to dismiss, it is clear that plaintiffs are tying certain defendants to certain acts.

142 (1985). As the Court of Appeals for this Circuit has noted,

"[w]here the defendant's subjective intent is an essential component of plaintiff's claim, once defendant has moved for pre-trial judgment based on a showing of the objective reasonableness of his actions, then plaintiff ... must come forward with something more than inferential or circumstantial support for his allegation of unconstitutional motive. That is, some direct evidence that the officials' actions were improperly motivated must be produced if the case is to proceed to trial."

*Martin v. District of Columbia Metropolitan Police Department,* 812 F.2d 1425, 1435 (D.C.Cir.), *vacated in part,* 817 F.2d 144 (D.C.Cir.), *reinstated sub nom. Bartlett v. Bowen,* 824 F.2d 1240 (D.C.Cir.1987), *cert. denied,* ⸺ U.S. ⸺, 108 S.Ct. 1121, 99 L.Ed.2d 281 (1988); *cf. Liberty Lobby v. Rees,* 852 F.2d 595 (D.C.Cir.1988).

This requirement "operate[s] in practice much like Rule 9(b)'s requirement [of pleading with] ... particularity." *Martin v. Malhoyt,* 830 F.2d at 257. Thus, the complaint must specify the direct evidence of the acts that allegedly constitute the constitutional infringements, the nature and manifestations of the government official's unlawful intent, and the nexus between the two. *Id.*

The complaint, although lengthy, does not measure up to this rigorous standard. While it details heinous actions from which the Court and defendants might be able to infer unlawful motive, the complaint does not specify the "direct evidence" of act and motive that the Court of Appeals for this Circuit has specifically stated is a necessary predicate for discovery. Accordingly, the Court has no choice but to dismiss

plaintiff Susan Rochon's constitutional tort claims, without prejudice.[13]

## THE COURT MUST DISMISS PLAINTIFF SUSAN ROCHON'S CLAIMS UNDER 42 U.S.C. § 1985.

Defendants argue that the complaint does not adequately allege conspiracy and have moved to dismiss plaintiff Susan Rochon's claims under § 1985 (Count III of the Complaint). The Court will dismiss this claim, without prejudice.

▆▆▆▆ To state a claim under 42 U.S.C. § 1985, a complaint must allege that defendants (1) entered into an agreement (however tacit) (2) to deprive plaintiffs, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the law, and (3) committed an act in furtherance of the conspiracy and thereby injured the plaintiff. *See, e.g., Hobson v. Wilson,* 737 F.2d at 14; *Morgan v. District of Columbia,* 550 F.Supp. 465, 470 (D.D.C.1982), *aff'd,* 725 F.2d 125 (D.C. Cir.1983). As the complaint nowhere alleges or even implies that defendants entered into an agreement of any kind, the conspiracy allegation, as now pleaded, cannot stand. Consequently, the Court must dismiss the § 1985 claim, without prejudice.

## THERE IS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS EMPLOYED AT FBI HEADQUARTERS IN WASHINGTON D.C.; PLAINTIFFS ARE ENTITLED TO DISCOVERY AS TO WHETHER THERE IS PERSONAL JURISDICTION OVER THE OTHER PROPERLY NAMED DEFENDANTS.

Of the defendants who are sued in their individual capacities (i.e., all defendants but

---

**13.** In addition, there is a serious legal argument that, even absent the preemption and qualified immunity concerns, plaintiffs may not be able to bring a constitutional tort action. Courts have implied actions directly under the Constitution only where there is "no explicit congressional declaration" that money damages may not be awarded and where there are "no special factors counselling hesitation in the absence of affirmative action by Congress." *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388,

396–97, 91 S.Ct. 1999, 2004–05, 29 L.Ed.2d 619 (1971). Where plaintiffs may seek statutory relief, they may not be able to bring a *Bivens* action, regardless of whether the statute wholly compensates them for the damage suffered. *See, e.g., Schweiker v. Chilicky,* ⸺ U.S. ⸺, 108 S.Ct. 2460, ⸺ L.Ed.2d ⸺ (1988). Accordingly, whether these plaintiffs can bring a constitutional tort action is, *at most,* an unsettled question.

the Department of Justice, the FBI, and defendants Meese, Sessions, and Reynolds), 12 are employed at FBI Headquarters in Washington, D.C., and 9 work in FBI field offices outside the District of Columbia. *Amended Complaint,* ¶ 5. No defendant resides in the District of Columbia.

All of these defendants argue that service of process was improper because the Court has no personal jurisdiction over them and, pursuant to Fed.R.Civ.P. 12(b)(2), the remaining claims against them (the common law tort claims, which constitute Count IV of the Amended Complaint) must be dismissed. Plaintiffs, by contrast, argue that this Court has personal jurisdiction over every defendant. Neither defendants nor plaintiffs are wholly correct.

The parties agree that the only source of personal jurisdiction over these defendants is the District of Columbia long-arm statute. *See also, e.g., Tavoulareas v. Comnas,* 720 F.2d 192, 193 (D.C.Cir.1983). Under that statute, the Court has personal jurisdiction over any person "as to a claim for relief arising from the person's ... transacting any business in the District of Columbia." D.C.Code § 13–423(a)(1).

This section of the long-arm statute is "coextensive with the due process clause." *First Chicago International v. United Exchange Co.,* 836 F.2d 1375, 1377 (D.C.Cir. 1988). Thus, as an initial matter, plaintiffs must show that it would not offend "traditional notions of fair play and substantial justice" to subject each individual defendant to suit here. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also, e.g., Mizlou Television Network, Inc. v. National Broadcasting Co.,* 603 F.Supp. 677, 679 (D.D.C.1984).

In addition, the Court must consider the nature of the actions that allegedly give rise to personal jurisdiction. Those actions must be voluntary, *Tavoulareas v. Comnas,* 720 F.2d at 195, and must either be connected to the acts charged in the complaint, *First Chicago International v. United Exchange Co.,* 836 F.2d at 1377 n. 2, or be so "continuous and systematic" as to create an inference of actual "presence"

within the District of Columbia, *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416–18, 104 S.Ct. 1868, 1872–74, 80 L.Ed.2d 404 (1984). These have been denominated, respectively, "specific" and "general" grounds for personal jurisdiction. *See generally,* Hart, *You Can Run But You Can't Hide: Jurisdiction Over Foreign Defendants,* Torts and Insurance Law Journal 663 (Spring 1988).

■ From these principles, it should be obvious that the long-arm statute reaches those defendants who work in the District of Columbia. Through their affirmative association with an enterprise located in the District of Columbia, they have "purposefully avail[ed themselves] of the privilege of conducting activities within the [District of Columbia], thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), and creating the reasonable anticipation of being haled into court here because of their activities, *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Moreover, the business these defendants transact in the District of Columbia—their employment with the FBI—is directly tied to the acts charged in the Complaint. Thus, they satisfy both the "general" and "specific" tests for personal jurisdiction.

Defendants raise two arguments against these points. First, they assert that their contact with the federal government does not give rise to personal jurisdiction because of the "government contacts" exception to the D.C. long-arm statute. This is not so.

■ The "government contacts" doctrine is an outgrowth of the First Amendment right to petition the federal government, and it insulates those persons whose only contact with the District of Columbia is such a petition. *See, e.g., Rose v. Silver,* 394 A.2d 1368, 1373–74 (D.C.1978), *reh'g denied,* 398 A.2d 787 (D.C.1979). The doctrine does not provide a blanket exception for all governmental contacts, and it certainly does not exempt federal employees who work in the District of Columbia from

personal jurisdiction here. *See Steinberg v. International Criminal Police Organization*, 672 F.2d 927, 932 n. 10 (D.C.Cir. 1981).

Second, defendants argue that business contacts can lead to personal jurisdiction under the long-arm statute only where that business is commercial in nature. Not only does this argument fly in the face of the actual language of the long-arm statute— which speaks of "transacting *any* business," D.C.Code § 13–423(a)(1) (emphasis added), it is flatly contradicted by case law. *See, e.g., Steinberg v. International Criminal Police Organization*, 672 F.2d at 931 n. 7. As such, defendants' arguments are unavailing, and personal jurisdiction over the defendants employed in the District of Columbia is proper. *See also, e.g., Byrd v. Smith*, 693 F.Supp. 1199, 1200 (D.D.C.1986) (Sporkin, J.). The Court finds that it has personal jurisdiction over defendants Groover, Sharp, Blitzer, Mawn, Harp, Rarity, Koletar, Dean, Stapleton, Evans, Wilson, and Ahleridge.[14]

▮ The remaining defendants are FBI field agents or supervisors who were connected with either the Omaha or Chicago offices at the time of the events of which plaintiffs complain and who do not now reside or work in the District of Columbia. *Amended Complaint*, at ¶ 5. Consequently, the relationship between these defendants and the District of Columbia is not as easy to divine and depends upon the specific allegations and facts of this case.

In a sworn affidavit, plaintiff Donald Rochon has stated that (unnamed) defendants spread false rumors to officials at FBI Headquarters in Washington, D.C., about his conduct. *Rochon Affidavit*, ¶ 2. He further states that all field offices report to Headquarters daily, *id.* at ¶ 4, and that as a result of the "highly centralized" character of the FBI, "[a]ll FBI agents are in regular, continuous, and frequent contact with FBI Headquarters in the District of Columbia," *id.* at ¶¶ 3, 5. He also avers that FBI Headquarters "directly controls" and must approve many routine investigative procedures used by field agents, *id.* at ¶ 6, and that most important personnel decisions are made at FBI Headquarters, *id.* at ¶ 10. While this affidavit does not precisely tie each defendant to actions within the District of Columbia, it suggests both that personal jurisdiction may lie here and that plaintiffs should be permitted to conduct discovery on the limited question of whether personal jurisdiction is proper in this Court.

Some defendants have submitted affidavits contesting these averments, *see, e.g., Kempf Affidavit*, ¶ 6, but these contradicting statements do not end the inquiry. Rather, the questions of fact they reveal buttress the Court's finding that, on the basis of the Complaint and the record now before the Court, plaintiff is entitled to discovery on the question of personal jurisdiction over all non-resident defendants who are proper defendants to this suit.[15]

14. Defendants Evans, Wilson, and Ahleridge pose something of a special case. Whereas plaintiffs allege that the other defendants who work at FBI Headquarters in Washington, D.C. did so at the time of the events complained of, they allege that Ahleridge, Evans, and Wilson were transferred to Headquarters after the events that form the basis for plaintiffs' suit. From the standpoint of due process, however, there is no obstacle to asserting personal jurisdiction over these defendants. They currently avail themselves of the benefits of working in the District of Columbia and the protection of the District of Columbia's laws; moreover, their employment demands of them continuous and systematic presence in the District of Columbia sufficient to equate with actual "presence" for the purpose of personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,*

466 U.S. at 416–18, 104 S.Ct. at 1872–74. Accordingly, these defendants too are subject to service of process here. *See also McDaniel v. Armstrong World Industries*, 603 F.Supp. 1337 (D.D.C.1985).

15. Plaintiffs claim that, in addition to the "transacting any business" section of the long-arm statute, another section of that statute provides the Court with personal jurisdiction over all defendants. This section provides jurisdiction over persons who "cause[ ] tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C.Code § 13–423(a)(3). As this argument is an outgrowth of plaintiffs' conspiracy claim, *see Plaintiffs' Memorandum in Opposition to the Motions to Dismiss of the Individual Defendants*, at 41–44, it is relevant only if the basis for personal jurisdiction is participation in the alleged con-

*See, e.g., Crane v. Carr,* 814 F.2d 758, 760 (D.C.Cir.1987).[16]

## ON THE BASIS OF THE COMPLAINT AS CURRENTLY PLEADED, ALL BUT SIX DEFENDANTS OF THE INDIVIDUALLY NAMED DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY ON THE COMMON LAW TORT CLAIMS, AND THE COURT WILL DISMISS THESE CLAIMS AGAINST THEM.

All but six individually named defendants have moved to dismiss the common law claims against them on the grounds of absolute immunity.[17] Federal officials are entitled to such immunity from state law tort claims if their actions fall "within the scope of their official duties and the conduct was discretionary in nature." *Westfall v. Erwin,* —— U.S. ——, 108 S.Ct. 580, 584, 98 L.Ed.2d 619 (1988); *see also, e.g., Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). Perhaps the most salient feature of this immunity is that even a government official who acts with an unlawful motive

> ... would not lose ... his absolute immunity from common law tort liability, for immunity of the absolute kind adheres 'even when the [officer] is accused of acting maliciously and corruptly.' So long as the officer "performed the kind of act not 'manifestly or palpably beyond his authority,' but rather 'having more or less connection with the general matters committed by law to his control or supervision,' " absolute immunity clings to the officer's actions.

spiracy. In light of the dismissal, without prejudice, of plaintiffs' conspiracy claim, the Court will not address this basis for personal jurisdiction at this time.

**16.** Defendants have also asserted that it would be an abuse of discretion for the Court to retain "pendent jurisdiction" over the common law claims. The Court need not address this matter now, but it will consider this argument if discovery reveals that the Court does not have personal jurisdiction, independent of the federal claims, over the individually sued defendants.

**17.** The defendants who have moved to dismiss the common law claims on grounds of absolute

*Martin v. District of Columbia Police Department,* 812 F.2d at 1429 (D.C.Cir.1987) (*quoting Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967); *Briggs v. Goodwin,* 569 F.2d 10, 11–16 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).

In the Amended Complaint, plaintiffs state that "[a]ll of the individual defendants with governmental positions acted within the scope of their employment ..." *Amended Complaint,* at ¶ 6.[18] Given this admission that both the means used and ends sought by defendants were within the scope of their employment, the Court is constrained from examining the connection between the alleged acts and the bounds of defendants' official duties. Rather, the Court must limit its inquiry to examining whether defendants' actions were "discretionary" in nature.

■■■ Discretionary actions are not precisely defined, but, in general, are those actions that result from the exercise of judgment by a federal official. *See, e.g., Westfall v. Erwin,* 108 S.Ct. at 585; *Currie v. Guthrie,* 749 F.2d 185, 188 (5th Cir. 1984). Accordingly, courts have routinely insulated federal officials from tort liability for decisions affecting subordinates. *See, e.g., Dretar v. Smith,* 752 F.2d 1015 (9th Cir.1985); *Araujo v. Welch,* 742 F.2d 802 (3d Cir.1984); *Andrejko v. Sanders,* 638 F.Supp. 449 (M.D.Pa.) *aff'd,* 800 F.2d 1130 (3d Cir.1986). Were the law otherwise, government officials could not speak to their subordinates without "apprehension that the motives that control [their] official conduct may, at any time, become the sub-

immunity are defendants Koletar, Harp, Dean, Sharp, Evans, Wiley, Blitzer, Mawn, Groover, Rarity, Stapleton, Santimauro, Hawkins, Hegarty, Ahlerich, and Wilson. The defendants who did not so move are defendants Kempf, McGee, Webb, Dillon, Miller, and Veach.

**18.** At oral argument, plaintiffs stated that they wished to move for leave to amend their complaint to delete this sentence. The Court informed plaintiffs that they would have to make this motion in writing, which plaintiffs have not done. Accordingly, the Court must address the complaint as currently pleaded, regardless of plaintiffs' professed desire to amend it.

ject of inquiry in a civil suit for damages." *Spalding v. Vilas*, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896). Similarly, courts have held that federal officials are absolutely immune from common law tort liability for investigating, or failing to investigate, alleged illegal activity. *See, e.g., Martin v. Malhoyt*, 833 F.2d at 1050; *Powell v. Katzenbach*, 359 F.2d 234 (D.C.Cir. 1965), *cert. denied*, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966).

■ In keeping with these principles, the Court must dismiss the common law claims based on supervisory activities and on the failure to investigate the allegedly illegal harassment of plaintiffs. As a result, the Court will dismiss, without prejudice, all common law claims against defendants Koletar, Harp, Dean, Sharp, Evans, Wiley, Blitzer, Mawn, Groover, Rarity, and Stapleton.

In the amended complaint, plaintiffs charge defendants Santimauro, Hawkins, Hegarty, Ahlerich, and Wilson with failing to investigate Donald Rochon's allegations, with participating in the issuance of the letter of censure, or with the allegedly retaliatory transfer given to plaintiff Donald Rochon. Again, under the language in the Complaint, these defendants are entitled to absolute immunity from common law tort liability arising out of these actions.

The complaint also charges these defendants with participating in, condoning, or covering up various acts of racial harassment. *Amended Complaint*, ¶¶ 17, 20a, 43, 48. These actions are the product of the exercise of judgment and independent choice by federal officials and thus are discretionary. *See, e.g., Westfall v. Erwin*, — U.S. ——, 108 S.Ct. 580, 584–85, 98 L.Ed.2d 619. And, given the Complaint's admission that defendants' acts were within the scope of their employment, the Court

has no choice but to dismiss, without prejudice, all common law claims asserted against these defendants.

### THE COURT MUST DISMISS THE COMMON LAW CLAIMS AGAINST DEFENDANTS KEMPF, MCGEE, AND WEBB AS BARRED BY THE STATUTE OF LIMITATIONS. THE CLAIMS AGAINST DEFENDANTS DILLON, MILLER, AND VEACH ARE NOT TIME–BARRED, AND THEY WILL NOT BE DISMISSED.

The six remaining individually sued defendants did not raise the "official immunity" defense to plaintiffs' common law tort claims. Rather, they asserted that the claims were barred by the statute of limitations. The Court must agree that plaintiffs' claims against defendants Kempf, McGee, and Webb are untimely, and it will dismiss them. The Court must also find that plaintiffs' claims against defendants Dillon, Miller, and Veach are within the statute of limitations, and it will deny the motion to dismiss these common law claims.

■ The statute of limitations governing common law tort claims is determined by the applicable law of the forum state. *See, e.g., Gilson v. Republic of Ireland*, 682 F.2d 1022, 1024–25 n. 7 (D.C.Cir.1982); *Steorts v. American Airlines*, 647 F.2d 194 (D.C.Cir.1981). In this case, the District of Columbia's three-year statute of limitations applies to almost all of plaintiffs' common law claims, D.C.Code § 12–301(8); [19] the sole exception is Mr. Rochon's claim against defendant Veach for assault and battery, which has a one-year time bar. D.C.Code § 12–301(4); *see also, e.g., Burda v. National Association of Postal Supervisors*, 592 F.Supp. 273 (D.D.C.1984), *aff'd*, 771 F.2d 1555 (D.C.Cir.

**19.** The Court is aware of some cases applying the one-year intentional tort limitations period to a claim for intentional infliction of emotional distress. In those cases, however, the emotional distress claim has depended upon, and arisen out of, "'the same personal interests infringed by the intentional torts' expressly subject" to the one-year time bar. *Compare Thomas v. News World Communications*, 681 F.Supp. 55, 72

(D.D.C.1988) (emotional distress arising out of alleged libel) (*quoting Hanoch Tel–Oren v. Libyan Arab Republic*, 517 F.Supp. 542, 550 (D.D. C.1981), *aff'd*, 726 F.2d 774 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985) *with, e.g., Doe v. Yogi*, 652 F.Supp. 203 (D.D.C.1986) (three-year limit applied). That is not the case with the common law torts ascribed to these defendants.

1985) (three-year limitations period for intentional infliction of emotional distress); *Prouty v. National R.R. Passenger Corp.,* 572 F.Supp. 200 (D.D.C.1983) (negligence).

As a general rule, the statute of limitations begins to run "when the plaintiff[s] know[ ] both the existence and the cause of his [or her] injury." *United States v. Kubrick,* 444 U.S. 111, 113, 100 S.Ct. 352, 354–55, 62 L.Ed.2d 259 (1979). Since plaintiffs filed this suit on November 5, 1987, the statute of limitations would, in general, bar any assault and battery action of which plaintiffs knew or should have known before November 5, 1986, and it would bar those of plaintiffs' other common law tort claims that accrued before November 5, 1984.

█ Defendants Kempf, McGee, and Webb were stationed in the Omaha office of the FBI and the Complaint charges them only with conduct that occurred while plaintiff Donald Rochon was stationed in that office. According to the Complaint, Donald Rochon arrived in the Omaha office in January, 1983, and was transferred to the Chicago FBI office by June, 1984. *Amended Complaint,* ¶¶ 14, 35. This conduct falls outside the three-year statute of limitations period.[20] Accordingly, the Court must dismiss, with prejudice, the common law claims against defendants Kempf, McGee, and Webb, thereby dismissing them from this suit.

Defendants Dillon, Miller, and Veach also argue that the statute of limitations bars any suit against them for alleged actions taken before November 5, 1984. These arguments, however, are wrong.

█ Where "no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm,' it [is] proper to regard the cumulative effect of the conduct as actionable." *Page v. United States,* 729 F.2d 818, 821–22 (D.C.Cir.1984) (*quoting Fowkes v. Pennsylvania R.R.,* 264 F.2d 397, 399 (3d Cir.1959)). Under this "continuing tort" doctrine, the statute of limitations does not start to run when a plaintiff knows or should have known about the defendants' actions. *Page v. United States,* 729 F.2d at 823. Rather, the cause of action accrues, and the limitations period begins to run, at the time the tortious conduct ceases. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380–81, 102 S.Ct. 1114, 1125–26, 71 L.Ed.2d 214 (1982); *Page v. United States,* 729 F.2d at 821.

█ Although this doctrine is most commonly applied when the acts are "by nature of a repetitive character and [when] ... no single act can be identified as the cause of significant harm, *Pope v. Bond,* 641 F.Supp. 489, 496 (D.D.C.1986), it is not limited to such circumstances. Rather, the theory applies even to a series of acts that are not inherently "of a repetitive character" and even when a plaintiff was sufficiently aware of the harm caused to file an administrative complaint challenging the defendant's conduct. *See, e.g., Page v. United States,* 729 F.2d at 821–23 (administrative challenge to allegedly tortious drug treatment filed ten years before suit was filed); *see also, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (violations of Fair Housing Act); *Gross v. United States,* 676 F.2d 295, 300 (8th Cir.1982) (intentional infliction of emotional distress) (*cited approvingly in Page v. United States,* 729 F.2d 818).

---

**20.** Plaintiffs may believe that the conduct of defendants Kempf, McGee, and Dillon is actionable under the "continuing tort" doctrine. *See text* at 1562–63, *infra.* But the claims against these defendants are time-barred even if the continuing tort doctrine applies. Under that theory, the statute of limitations begins to run on the date of the last act allegedly committed by the defendant. *E.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380–81, 102 S.Ct. 1114, 1125–26, 71 L.Ed.2d 214 (1982). As the last act allegedly committed directly by these defendants occurred in June, 1984, *Amended Complaint,* at ¶ 35, even a "continuing tort" would be barred by the statute of limitations unless these defendants are vicariously liable for actions subsequently committed by others. The Complaint's sole attempt to tie these defendants to any conduct committed after plaintiffs left Omaha for Chicago is the conspiracy allegation, which the Court was compelled to dismiss. As such, even if the Court had not dismissed the conspiracy charge, the "continuing tort" theory would apply only to the conspiracy claim itself.

■ As such, the continuing tort theory applies to the common law torts alleged in this case, for the harms alleged by plaintiffs flow not from defendants' individual actions but from the cumulative and synergistic effect of defendants' allegedly wrongful conduct. Accordingly, the alleged actions of defendants Miller, Veach, and Dillon are not separate activities but amount to allegations of the "continuing torts" of intentional infliction of emotional distress, invasion of privacy, and, conceivably, negligence. As the Complaint alleges that the conduct of these defendants continued into "early 1986," *Amended Complaint*, at ¶ 47, the common law claims against these defendants fall within the three-year statute of limitations.

The sole exception to this finding relates to the claim against defendant Veach for assault and battery. The Complaint alleges that the assault and battery occurred on one day, January 9, 1986. Accordingly, the Court must find that plaintiffs have not pleaded a continuing tort for assault and battery and must dismiss that claim, with prejudice, as barred by the statute of limitations.

## THE COURT MUST DENY DEFENDANTS' MOTION TO DISMISS THE COMMON LAW CLAIMS ON THE GROUNDS OF INADEQUATE PLEADING.

Several defendants, including the remaining defendants, have moved to dismiss the common law claims on the grounds that they are not pleaded in sufficient detail. This is not reason to dismiss these claims.

■ Under Fed.R.Civ.P. 8, a complaint must give the opposing party "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). As long as the complaint meets this general rule, and the allegations are not subject to a "heightened

pleading standard," *see* Fed.R.Civ.P. 9 and pp. 15–17, *supra*, the complaint adequately states a claim even if it does not detail allegations that go to the precise elements of the claim charged. *See, e.g., id.;* 5 C.A. Wright & A. Miller, *Federal Practice and Procedure:* Civil §§ 1215–16.[21]

■ The amended Complaint does not precisely delineate how the acts alleged make out legal claims for intentional infliction of emotional distress, invasion of privacy, negligence, or gross negligence. Nor need they do so. *See, e.g., Federal Practice and Procedure:* Civil § 1217. While the complaint is not a discrete and careful statement of the precise allegations advanced against each defendant, the allegations sufficiently—albeit barely sufficiently—inform defendants of the nature of and grounds for plaintiffs' common law claims. The motion to dismiss those claims on the grounds of inadequate pleading will be denied.

## THE COURT REQUIRES ADDITIONAL BRIEFING ON THE QUESTION WHETHER VENUE IS PROPER IN THIS FORUM.

Finally, the individual defendants argue that the common law claims must be dismissed because venue is not properly laid in this forum. This venue question is particularly difficult, as the history of this case reveals.

Plaintiffs filed this suit on November 5, 1987, and filed a nearly identical suit in the Superior Court for the District of Columbia five days later. *See Complaint, Rochon v. Dillon, attached to Petition of Defendant Reynolds for Removal and Consolidation.* The only apparent differences between these suits are that plaintiffs did not raise their Title VII claim in the Superior Court action and, presumably as a consequence, defendant Reynolds was the only official defendant named in the Superior Court

---

21. Thus, for example, the complaint for negligence in the Official Forms accompanying the Federal Rules of Civil Procedure does not allege that defendant breached a duty owed to plaintiff and thereby directly and proximately caused plaintiff's injury; rather, it simply alleges that

plaintiff's injury was caused by defendant's negligence. *See* Form 9, Appendix of Forms, Fed. R.Civ.P.; *see also* Fed.R.Civ.P. 84 ("the forms contained in the Appendix of Forms are sufficient under the rules ...").

suit. On December 8, 1987, defendant Reynolds—and no other defendant—moved to remove the Superior Court action to the United States District Court for the District of Columbia and to consolidate it with this suit. The Court granted this petition on February 25, 1988.

■ Ordinarily, a Court looks to 28 U.S. C. § 1391 to determine if venue is appropriate in the district in which it sits. But this section does not, at least as a general matter, apply to a suit that has been removed to federal court. In that case, venue is determined with respect to the removal statute, which provides that venue is appropriate wherever a case is properly removed. 28 U.S.C. § 1441(e); *see also Federal Practice and Procedure: Jurisdiction* § 3726 (1985).

Defendants argue, however, that venue in this case should be determined by the general venue statute. They maintain that, as they did not join the removal petition, they should not be deemed to have lost their argument that venue is inappropriate under the general venue statute. Neither defendants nor plaintiffs, however, address this argument in any detail.

Accordingly, the Court will reserve decision on the venue argument raised by defendants and will ask for supplemental briefing on two specific questions: (1) Where a multi-defendant case has been removed to federal court upon a removal petition filed by one defendant, what statute determines whether venue is proper with respect to the claims against the defendants who did not join in the removal petition; and (2) If venue in such a case would ordinarily be determined with respect to the removal statute only, would this rule apply even where the relevant claims had already been pending in federal court before the case was removed? [22]

## CONCLUSION

This suit alleges that federal officials charged with enforcing anti-discrimination laws have themselves designed, conducted, or condoned a concerted campaign of racial intimidation and harassment. Defendants have moved to dismiss the complaint. Consequently, the Court cannot now address the truth or falsehood of these terrible charges but must confine itself to examining the legal sufficiency of the complaint. And the complaint contains defects in both pleading and legal theory that constrain the Court to dismiss many of plaintiff's claims, some with and some without prejudice.

The Court will deny defendants' motion to dismiss plaintiff Donald Rochon's claims for relief under Title VII of the Civil Rights Act of 1964. The Court must grant the motions to dismiss all of Donald and Susan Rochon's other federal claims and must also dismiss all individually named defendants but for defendants Miller, Dillon, and Veach. All dismissals are without prejudice, except for the dismissals, with prejudice, of the common law claims asserted against defendants Kempf, McGee, and Webb, and the assault and battery claim against defendant Veach. Finally, the Court will allow discovery concerning whether it has personal jurisdiction over the remaining individually sued defendants and will invite supplemental briefs on the question whether this Court is a proper venue for the common law claims.

The Court will issue an Order, of even date herewith, memorializing these findings.

## ORDER

In accordance with the Opinion in the above-captioned case, issued of even date herewith, and for the reasons set forth therein, it is this 10th day of August, 1988,

---

**22.** The Court must note one additional point. In light of the various dismissals (largely without prejudice) in this Opinion, as memorialized in the accompanying Order, the only remaining individual defendants are defendants Miller, Dillon, and Veach. They are also defendants to a pending suit in Chicago, which defendants allege charges them with conduct and violations of law identical to the charges in the instant suit. If that is so, it may be that transfer of the claims against these defendants would be appropriate.

ORDERED that Counts I, III, and IV of the Amended Complaint shall be, and hereby are dismissed, without prejudice, against defendants Meese, Reynolds, Sessions, the Federal Bureau of Investigation, and the Department of Justice; and it is

FURTHER ORDERED that Count II of the Amended Complaint shall be, and hereby is, dismissed against all defendants except for defendant Attorney General of the United States; and it is

FURTHER ORDERED that the federal defendants' motion to dismiss plaintiff Donald Rochon's Title VII claim (Count II of the Amended Complaint) shall be, and hereby is, denied, without prejudice; and it is

FURTHER ORDERED that the federal defendants' motion for summary judgment on plaintiff Donald Rochon's Title VII claim (Count II of the Amended Complaint) shall be, and hereby is, denied, without prejudice; and it is

FURTHER ORDERED that defendants' motion to dismiss plaintiff Susan Rochon's Title VII claim (Count II of the Amended Complaint) shall be, and hereby is, granted; and it is

FURTHER ORDERED that defendants' motion to dismiss all other claims of plaintiff Susan Rochon for lack of standing shall be, and hereby is, denied, without prejudice; and it is

FURTHER ORDERED that the federal defendants' motion to dismiss plaintiffs' constitutional tort claim (Count I of the Amended Complaint), § 1985 claim (Count II of the Amended Complaint), and common law claims against them shall be, and hereby is, granted, without prejudice; and it is

FURTHER ORDERED that the motion filed jointly by the individually named defendants to dismiss all claims against them shall be, and hereby is, granted, without prejudice, with respect to plaintiffs' constitutional tort claim (Count I of the Amended Complaint), Title VII claim (Count II of the Amended Complaint), and § 1985 claim (Count III of the Amended Complaint), and denied with respect to plaintiffs' common law claims (Count IV of the Amended Complaint); and it is

FURTHER ORDERED that defendants Harp and Evans' motion to dismiss all claims against them shall be, and hereby is, granted, without prejudice; and it is

FURTHER ORDERED that defendant Harp's motion to dismiss all claims against him is rendered moot by virtue of the above decision; and it is

FURTHER ORDERED that defendants Dean, Koletar, Rarity, and Mawn's motion to dismiss all claims against them shall be, and hereby is, granted, without prejudice; and it is

FURTHER ORDERED that defendant Groover's motion to dismiss all claims against him shall be, and hereby is, granted, without prejudice; and it is

FURTHER ORDERED that defendant Webb's motion to dismiss all claims against him shall be, and hereby is, granted without prejudice as to the constitutional and § 1985 claims dismissed abouve and with prejudice as to the common law tort claims; and it is

FURTHER ORDERED that defendants Sharp, Hawkins, and Santimauro's motion to dismiss all claims against them shall be, and hereby is, granted, without prejudice; and it is

FURTHER ORDERED that defendants McGee and Kempf's motion to dismiss all claims against them shall be, and hereby is, granted, without prejudice as to the constitutional and § 1985 claims dismissed above and with prejudice as to the common law tort claims; and it is

FURTHER ORDERED that defendants Stapleton, Blitzer, and Wiley's motion to dismiss all claims against them shall be, and hereby is, granted, without prejudice; and it is

FURTHER ORDERED that defendants Ahlerich, Wilson, and Hegarty's motion to dismiss all claims against them shall be, and hereby is, granted; and it is

FURTHER ORDERED that defendants Veach, Miller, and Dillon's motion to dismiss all claims against them shall be, and hereby is, granted with respect to all

claims but the common law claims, and shall be, and hereby is, denied, without prejudice, with respect to plaintiffs' common law actions, except that plaintiff Donald Rochon's claim against defendant Veach for assault and battery shall be, and hereby is, dismissed, with prejudice; and it is

FURTHER ORDERED that the parties shall submit additional briefing on the precise questions of venue raised in the Opinion that accompanies this Order within thirty days from the date of this Order, and shall have the time allotted by the Local Rules within which to file any and all responses and replies; and it is

FURTHER ORDERED that plaintiffs' claim for "outrageous conduct" shall be, and hereby is, dismissed; and it is

FURTHER ORDERED that, in the event that the Court issues an Order finding venue is proper in this Court, plaintiffs shall conduct any and all discovery on the question of personal jurisdiction over the remaining defendants within sixty days from the date of such Order.